OCCIDENTAL CHEMICAL COMPANY, Plaintiff-Appellant, *v.* AGRI PROFIT SYSTEMS, INC., Defendant-Appellee.—OCCIDENTAL CHEMICAL COMPANY, Plaintiff-Appellant, *v.* ROBERT F. McCULLOUGH *et al.*, Defendants-Appellees.

Second District (2nd Divison)   Nos. 74-220, 74-223 cons.

Opinion filed December 2, 1975.—Supplemental opinion filed on rehearing May 13, 1976.

Stitt, Moore, Kearns, Szala, Bieg & Weirauch, of Arlington Heights, and Irving B. Campbell, of Campbell & Johnson, of St. Charles, for appellant.

Stephen M. Cooper, of Geneva, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Kane County, Illinois, granting summary judgment for the plaintiff and against the defendants for the principal amount admittedly due on an account plus interest at the rate of 1% per year. The parties had contracted for a service charge of 1% on past due balances without specifying any period of time. Whether per year or per month was intended is the matter in dispute.

The plaintiff is Occidental Chemical Company, a division of Occidental Petroleum Corporation, a California corporation authorized to do business in Illinois. The defendants are Agri Profit Systems, Inc., an Illinois corporation, and Robert F. McCullough and Mary P. McCullough, who are directors, officers, and stockholders of Agri Profit Systems. Separate suits were brought by the plaintiff against Agri Profit Systems and against Robert F. and Mary P. McCullough, but the two cases were consolidated. The plaintiff has taken this appeal, contending that the correct rate is 1% per month. The defendants maintain that under the contract documents and the laws of South Dakota, where the contract was made, 1% per year is the correct rate.

On February 25, 1971, at Sioux Falls, South Dakota, the plaintiff entered into a written contract with Agri Profit Systems, appointing it an Occidental dealer to sell and deal in agricultural chemicals, materials, and supplies. At the same time, Robert F. McCullough and Mary P. McCullough became individual guarantors for Agri Profit Systems. The dealer agreement provided: "Dealer shall pay for all products shipped hereunder in accordance with the terms and conditions set forth in Occidental's Price Lists covering said products in effect at the time of shipment which Price Lists are hereby incorporated by reference as a part of this Agreement." The only price list in effect during the period in question stated: "Service Charge of 1% will be charged on all past due balances."

Subsequent to February 25, 1971, Agri Profit Systems ordered and received fertilizers and related agricultural chemicals from the plaintiff,

and the plaintiff sent statements to it each month. The various monthly statements showed large numbers of debits charged to the account of Agri Profit Systems during consecutive months in 1971, 1972, and 1973, at the rate of 1% per month. Printed at the top of each of the monthly statements was the information that a "finance charge" would be assessed monthly on all past due balances. At the bottom of each of the statements this appeared: "Further finance charges may be avoided by payment of the entire past due balance herein by the 25th of next month."

Agri Profit Systems did not object to the statements, but continued to order products from the plaintiff and also made payments on its account. One of the payments, in the amount of $41,829.70, was made on March 12, 1973, according to the summary judgment affidavits, after monthly statements had been issued each month since March of 1971 showing amounts due, including the service or finance charges. Agri Profit Systems was indebted to the plaintiff on two accounts, one for its place of business at Chippewa Falls, Wisconsin, and the other for its place of business at Menomonee, Wisconsin, and the affidavits indicate that on March 12, 1973, Agri Profit Systems paid its Chippewa Falls account in full, including service or finance charges of $738.55. Subsequently Agri Profit Systems paid an additional $35,000 to the plaintiff, on September 24, 1973, after receiving statements showing that service or finance charges for five more months had been added to its account, all computed at the rate of 1% per month on past due balances.

Section 3—3 of chapter 54 of the South Dakota Compiled Laws Annotated (1967) states: "When a rate of interest is prescribed by a law or contract, without specifying the period of time by which such rate is to be calculated, it is to be deemed an annual rate." The defendants contend that since the price list incorporated by reference in the dealer agreement provided for a service charge of 1% without specifying any period of time, the South Dakota statute applied to resolve the apparent ambiguity by making it an annual rate, and precluded the consideration of extrinsic evidence which might point to a contrary unexpressed intent. The plaintiff, on the other hand, takes the position that the actions of the parties showed how their agreement was to be interpreted, and made it unnecessary and improper to look to the statute for a rule of construction.

■■ We must first consider whether the South Dakota statute on interest applies to a provision for a service charge. A service charge accompanying a sale on credit has been differentiated from interest. (Ill. Rev. Stat. 1973, ch. 121½, §502.11.) Although having many different meanings in different contexts (See 38A Words and Phrases, "Service charge" (1967)), the expression "service charge" is sometimes used, in situations involving sales of merchandise on credit, as the equivalent of

"finance charge," as is evident from the facts of this case. Finance charges are not interest, it has been held in this State (*Johnson v. Sears Roebuck & Co.*, 14 Ill. App. 3d 838, 848-52), and are not subject to the provisions of the Illinois Interest Act, which contains a section (Ill. Rev. Stat. 1973, ch. 74, §9) substantially the same as the South Dakota statute in question. In the absence of a showing that the South Dakota statute on interest is applicable to a service or finance charge imposed in connection with a sale of merchandise on credit, we will presume that South Dakota law is like that of Illinois (see *O'Brien v. Rautenbush*, 10 Ill. 2d 167, 169; 29 Am. Jur. 2d *Evidence* §§191, 192 (1967)), and will hold that the statute does not apply. *Johnson v. Sears Roebuck & Co.*

■■ ■  Since the contract therefore remains ambiguous, extrinsic evidence may be considered to aid the court in reaching a proper decision. (*Coney v. Rockford Life Insurance Co.*, 67 Ill. App. 2d 395, 400.) In seeking to ascertain the intention of the parties to a contract, regard may be had to the practical construction which the parties have given the contract by their acts, whether contemporaneous or subsequent. (*Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 91; 17 Am. Jur. 2d *Contracts* §274 (1964).) In the case before us, the plaintiff sent out a great many monthly statements showing service or finance charges of 1% per month, and Agri Profit Systems, according to the affidavit of the plaintiff which was on this point uncontradicted, made payments on its account without objection to those charges, and paid its Chippewa Falls account in full, including such charges. It is clear from the acts of the parties that they understood the stated percentage to be a monthly rate, and therefore the contract will be so read.

For the reasons stated, the order of the Circuit Court of Kane County is reversed and the the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

RECHENMACHER, P. J., and T. J. MORAN, J., concur.

## SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendants have filed a petition for rehearing, urging that our opinion was based on an argument improperly raised for the first time in the plaintiff's reply brief, and that under the law of South Dakota all charges in connection with the extension of credit are governed by the South Dakota Interest Act.

■■  The defendants are correct in pointing out that under Supreme

Court Rule 341, subparagraphs (e)(7) and (g) (Ill. Rev. Stat. 1975, ch. 110A, par. 341), points not argued in an appellant's brief are deemed waived and are not to be raised for the first time in the appellant's reply brief. However, it is established that Rule 341 states an admonition to the parties and not a limitation upon the jurisdiction of a reviewing court, and under Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366) a reviewing court may, in the exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties. (See *Hux v. Rdben*, 38 Ill. 2d 223, 224-25; *In re Application of County Treasurer*, 25 Ill. App. 3d 717, 718-19; *People v. Henderson*, 119 Ill. App. 2d 403, 405.) To reach a just result in this case we should consider all the points which were raised.

The defendants, in arguing that under South Dakota law all charges in connection with the extension of credit are governed by the South Dakota Interest Act, cite *Rollinger v. J.C. Penney Co.* (1971), 86 S.D. 154, 192 N.W.2d 699, and also a South Dakota Attorney General's opinion, Opinion No. 74-25, which states that "all charges in connection with the extension of credit are interest." The plaintiff, responding, points out that in the case cited, the finance charges which were held to be interest were charges under an agreement by the creditor to forbear immediate collection of its money if minimum installment payments were made as provided in a revolving charge account agreement; that service or finance charges were said in that case not to be "interest" unless imposed for the lending, or the forbearance of collection, of money; and that where, as in the case before us, there is no provision for installment payments or any agreement by the seller to refrain from requiring prompt payment in full when a bill is rendered, a service or finance charge is not "interest" but simply represents the opposite of a discount for prompt payment, *i.e.*, a penalty for failure to make prompt payment when due.

The South Dakota court, in the case on which both parties rely, stated as follows: "In our opinion a sale of merchandise made and to be paid for pursuant to a revolving charge account agreement such as we have here does not qualify as a true timeprice sale." In holding that the particular charge account agreement resulted in usury, the court pointed out that interest, as defined by South Dakota statute, was "compensation allowed for the use, or forbearance, or detention of money or its equivalent." The court said, further: "Forbearance signifies a contractual obligation of a lender or creditor to refrain, during any given period of time, from requiring the borrower or debtor to repay a loan or debt."

■■ The South Dakota case and the Attorney General's opinion are insufficient, we believe, to establish that under the law of South Dakota, where there is no agreement by the creditor to forbear, a service or finance charge added for late payment is "interest" and the South Dakota

statute on interest is applicable in the interpretation of the provision for that charge. We therefore adhere to our original position that extrinsic evidence may be considered in the case before us; that the intent of the parties may be reached by looking to the practical construction they gave their contract by their own acts; and that the contract should accordingly be read as imposing a charge of 1% per month, not 1% per year, on past due balances.

Accordingly, the order of the Circuit Court of Kane County is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.