CHEM-PAC, INC., Plaintiff-Appellee and Cross-Appellant, v. SHELDON SIMBORG *et al.*, d/b/a Bishop Properties, Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   No. 85—1523

Opinion filed June 17, 1986.

John W. Gilligan and David C. Burtker, both of Crooks & Gilligan, Ltd., of Chicago, for appellants.

James T. Ferrini and Jeffrey J. Asperger, both of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Chem-Pac, Inc., brought an action against defendants Sheldon Simborg, Philip Simborg, and Milton Levenberg, d/b/a Bishop Properties, to recover damages sustained in a fire. A jury returned a verdict for the plaintiff.

In November 1972, defendants acquired title to approximately one square block of industrial real estate on the southwest side of Chicago. Five large buildings and several smaller ones made up this complex. Obsolescence and the relocation of industry resulted in increased vacancy and reduced maintenance of the properties.

Two of the buildings are involved in this case. A 27,000-square-foot brick building located on the northwest corner of 76th and Bishop streets was leased to and occupied by the plaintiff. This will be referred to as the "smaller building." The other building, the "larger building," was located immediately to the west and shared a fire wall with the smaller building. The larger building occupied approximately 44,000 square feet. It was vacant and was not rented. Both buildings shared one common roof in addition to the party wall.

On March 10, 1976, a fire began in the larger building and spread to the smaller one, resulting in damage to the smaller building and its contents. The dispute between the parties is over who had control of the larger building and who had the responsibility to secure the premises.

When the parties first entered into the lease in March 1973, plaintiff leased the smaller building "as is." The property was basically a shell with a sound structure but without plumbing, heating, or electricity. Plaintiff improved the building and brought it into compliance with the city's building code. In an effort to secure the building from vagrants and vandals, plaintiff also leased the larger building for a year. When plaintiff discovered that it could not secure the larger building, it did not renew the lease, which expired October 31, 1975, some five months before the fire.

In December 1975, after the lease expired, the larger building was

cited for code violations. Defendants were notified of the violations and were ordered to tuck-point the walls, make the walls safe, replace or repair broken windows, and make all the necessary repairs or tear down the building. Defendants did not appear in court to respond to the violations.

On March 20, 1976, a fire began in the larger building. The fire spread to and destroyed the smaller building occupied by plaintiff. An inspection conducted by the city of Chicago fire department showed that the fire broke through to the smaller building at the fire wall. Fire officials also concluded that the fire was started by either vagrants or vandals, who used an accelerant like gasoline or kerosene.

Plaintiff filed a two-count complaint on March 3, 1977. Count I was a general negligence action in which plaintiff alleged that defendants breached their duty to maintain, supervise, and secure the larger building. Count II realleged the essential allegations under a *res ipsa loquitur* theory—that defendants had the "sole and exclusive care, custody, and control of the premises."

Trial ensued, and a jury found the loss sustained by plaintiff to be $228,597. It also found plaintiff to have been 15% negligent, and judgment for $194,307.45 was entered. Defendants appeal, alleging that: (1) the trial court improperly instructed the jury on *res ipsa loquitur*; and (2) the court erred in ruling that Chem-Pac was the proper party plaintiff; that Joseph Ray Manz was qualified to testify concerning damages; and that defendants could not introduce evidence of their insurance status. Plaintiff filed a cross-appeal, claiming that the court erred in denying its motion to recover costs.

I

Defendants allege that the trial court erred in instructing the jury on *res ipsa loquitur*. They contend that the instruction was inapplicable because plaintiff had access to the larger building, thereby negating the element of "control" necessary for recovery under this theory. Defendants argued that plaintiff left material in the larger building after it terminated the lease, retained keys to the building, and had access to a boiler room. Defendants also claim that because plaintiff was found to be 15% negligent, defendants could not have had the requisite control over the building.

■ Defendants' argument must fail, however, because there was sufficient evidence to support the verdict on general negligence grounds. Section 2—1201(d) of the Code of Civil Procedure states that a verdict will not be set aside if any ground of recovery is sufficient to sustain the verdict. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1201(d).) Here, the evidence was sufficient for the jury to find that defendants' negli-

gence was the proximate cause of the fire. Defendants had notice that vagrants or transients had access to the larger building because empty wine bottles and cigarette butts were often found; yet, defendants did nothing to secure the building. They did not post a watchman to guard the building as required by city ordinance. (Chicago Municipal Code sec. 39—13.) Defendants also did not appear in court after they were notified of building-code violations, nor did they remedy any of the violations. Battalion Chief Joseph Taylor of the city of Chicago fire department testified that the fire could have been prevented by proper maintenance and security, so the fire can be traced directly to defendants' negligence. As owners of record, defendants could not delegate their duty to maintain the property to plaintiff, a lessee who had no contractual or common law duty to maintain the building.

Because of our finding that the evidence supports the verdict on general negligence grounds, we need not decide whether the *res ipsa loquitur* instruction was proper. See *Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 337, 456 N.E.2d 192, *appeal denied* (1984), 99 Ill. 2d 535.

II

Defendants allege that certain rulings made by the trial court were prejudicial and erroneous. First, they claim that Chem-Pac is not the proper party plaintiff because it had no pecuniary interest in the litigation. Defendants claim that plaintiff was reimbursed completely by its insurer. After a hearing, the court found that plaintiff had an interest over and above the amount it received from its insurer, and it denied defendants' motion to strike Chem-Pac as the plaintiff.

■■■ Subrogation actions are governed by section 2—403(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—403(c)). We have held that "[a] long line of cases has established the principle that if an insured plaintiff has even a *de minimus* pecuniary interest in the suit, that interest is sufficient to allow a subrogation action to be maintained in the plaintiff's name." (*Radtke v. International Heater Co.* (1986), 140 Ill. App. 3d 542, 544, 488 N.E.2d 1352.) In this case, the evidence showed that plaintiff's loss was not completely covered by insurance and that plaintiff had not been made whole. There was no error in the court's ruling.

■■ Defendants also claim that Joseph Ray Manz was not qualified to testify about damages. Whether one is qualified to testify as an expert witness is a determination that is within the discretion of the trial court. (*Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 515, 300 N.E.2d 771, *appeal denied* (1974), 54 Ill. 2d 597.) As one scholar has noted, "Expert testimony is not limited to scientific or technical areas,

but rather includes all areas of specialized knowledge. All that is required is that the testimony of a qualified witness assist the trier of fact." (E. Cleary and M. Graham, *Handbook of Illinois Evidence* sec. 702.1 (4th ed. 1984).) We also have held that " '[a] witness whose knowledge is based upon practical experience is no less an expert than one who possesses particular academic or scientific knowledge. Their respective effect on the triers of fact is one of degree only. [Citation.]' " *Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 799, 432 N.E.2d 503, quoting *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 516, 388 N.E.2d 844, 846.

In this case, Manz was qualified to testify about damages that plaintiff sustained in the fire. Manz worked in the chemical manufacturing and packaging business since 1969. His duties included buying equipment and material for the business. By dealing with others in the industry, attending auctions, and reading catalogs, Manz became familiar with the market price of both new and used equipment and material and was able to estimate their cost when he needed to purchase something. After the fire, Manz took an inventory and identified the items lost in the fire, determined their salvage value, and calculated the value of the inventory both before and after the fire. He estimated the total loss to be $228,597, which was the exact amount of loss that the jury found. The jury obviously found Manz to be both a credible and competent witness.

Any alleged lack of knowledge or expertise on the part of Manz goes only to the weight and not the admissibility of his testimony. (*Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 F.2d 213, 221.) Defendants had the opportunity to cross-examine Manz and to illustrate his alleged lack of expertise to the jury. They also chose not to present their own witnesses to rebut Manz' testimony. Manz' testimony, therefore, was properly admitted.

Defendants also allege that they should have been allowed to prove that they had no insurance on the property, thus rebutting the inference of arson that arose from Chief Taylor's testimony. The record, however, does contain evidence that defendants had insurance coverage. In addition, the jury could have inferred just as easily from Chief Taylor's testimony that the fire was started by someone else because there was extensive testimony concerning plaintiff's efforts to secure the larger building during its tenancy.

The court's rulings, therefore, were proper. The judgment in favor of plaintiff is affirmed.

### III

Plaintiff filed a cross-appeal, claiming that the court erred in

denying its motion to recover costs under Supreme Court Rule 219(b). The rule states;

> "If a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making the proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made." (87 Ill. 2d R. 219(b).)

The rule requires that the matters asserted be proved and that the opposing party lacked good reasons to deny the request. (*Mattis v. State Farm Fire & Casualty Co.* (1983), 118 Ill. App. 3d 612, 624, 454 N.E.2d 1156.) The policy behind the rule is to promote settlement and simplify litigation. *Exchange National Bank v. DeGraff* (1982), 110 Ill. App. 3d 145, 160, 441 N.E.2d 1197.

Here, plaintiff filed a "Request to Admit," which requested that defendants admit, among other things, that the fire began in the larger building and spread to the smaller one and that plaintiff sustained $216,761 in damages. Plaintiff, in essence, wanted defendants to concede plaintiff's entire case. Clearly, this is not the intent of the rule.

In *Exchange National Bank v. DeGraff* (1982), 110 Ill. App. 3d 145, 441 N.E.2d 1197, we held that defendant bank had a good reason to refuse to admit the allegations sought by plaintiff because the bank's admission of the plaintiff's requests would be conceding away its whole case. (110 Ill. App. 3d 145, 162, 441 N.E.2d 1197.) We went on to state that "[i]f the rule is extended to all controverted matters which become 'proven facts' only through a general verdict or judgment, the prevailing party to an action would presumably be allowed to recover fees and expenses routinely. We do not believe this is the intent of Supreme Court Rule 219(b)." (110 Ill. App. 3d 145, 162, 441 N.E.2d 1197.) Similarly, in this case, defendants were not required to admit liability.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.