No. 3--06–0092

Filed June 14, 2007.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| HELEN E. MEYERS, | ) | Appeal from the Circuit Court |
| | ) | for the 14th Judicial Circuit, |
| | ) | Whiteside County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | No. 02 AR 156 ST |
| v. | ) | |
| | ) | |
| ED WOODS, | ) | Honorable |
| | ) | Timothy J. Slavin, |
| Defendant-Appellant, | ) | Judge, Presiding. |
| | ) | |
| v. | ) | |
| | ) | |
| BRAD FOLKERS, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

JUSTICE HOLDRIDGE delivered the Opinion of the Court

Plaintiff Helen Meyers filed suit against defendant Ed Woods in 2002 alleging that defendant's breach of his warranty to install an in-floor heating system in a workmanlike manner damaged the heating system. Defendant then brought in Brad Folkers as a third-party defendant, alleging that if he were at fault, then third party defendant Folkers was also at fault as Folkers was the general contractor and instructed defendant not to include glycol in the heating system, leading to the damage. An arbitrator found for defendant and third party defendant. Plaintiff then set the matter for trial in the circuit court. The circuit court at bench trial found for both plaintiff and third party defendant Folkers and against defendant. Defendant then filed a motion to reconsider judgment,

which was denied by the trial court. Defendant now appeals, contending that: (1) the trial court erred in finding that the case was a breach of contract case when the pleadings indicated a negligence case; (2) the trial court erred in allowing plaintiff to amend the prayer for relief of the amended complaint on the day of trial; (3) the trial court's decision that the defendant failed to perform his job in a workmanlike manner was against the manifest weight of the evidence; (4) the trial court's decision that there was a contractual relationship between the plaintiff and defendant, and that there was no contractual relationship between defendant and third-party defendant was against the manifest weight of the evidence; (5) the trial court erred in determining that plaintiff's witnesses were experts; and (6) the trial court's judgment that the proximate cause of damages was defendant's breach of the contract was against the manifest weight of the evidence.

Upon review, we find that defendant has waived the issue of whether or not the trial court properly characterized this case as a contract case and has also waived the issue of whether the trial court was correct in allowing the amended prayer for relief on the day of trial. We affirm the trial court's decision that defendant failed to perform his job in a workmanlike manner as not against the manifest weight of the evidence, affirm the trial court decision determining plaintiff's plumbing witnesses were experts, and affirm the trial court's determination that there was a contractual relationship between plaintiff and defendant and not between defendant and third-party defendant as not against the manifest weight of the evidence.

FACTS

Plaintiff filed her original complaint against defendant on September 18, 2002. On November 5, 2003, plaintiff filed an amended complaint against defendant alleging that: 1) Brad Folkers, on plaintiff's behalf (or alternately, for plaintiff's benefit), engaged defendant to perform plumbing work

2

and install the heating system in the floor of a building; 2) defendant held himself out as a plumber and thereby warranted to do the work in a workmanlike manner; 3) defendant failed to perform his work in a workmanlike manner by installing water instead of antifreeze (glycol) into the plumbing of the in floor heating system, which froze, damaging the heating system; 4) Plaintiff's damages were the direct and proximate result of defendant's breach of warranty to perform his work in a workmanlike manner and such breach of warranty proximately caused the damages sought; and 5) defendant was negligent in the construction of the heating system, and negligence was the proximate cause of the damages. Plaintiff sought $19,000 in damages.

On August 28, 2003, defendant filed for motion for leave to join as defendant Brad Folkers. Defendant filed another motion to join Brad Folkers (hereinafter "Folkers") as third-party defendant on September 24, 2003, alleging that plaintiff entered into a contractual arrangement with Folkers, not defendant, that Folkers was the general contractor on the job, and that Folkers was the one who made the decision on whether or not to place glycol (antifreeze) in the heating system.

The case was assigned to arbitration and on June 21, 2005, the arbitrator ruled in favor of defendant against plaintiff and in favor of third-party defendant Folkers against defendant Woods. On July 8, 2005, plaintiff rejected the arbitrator's decision and requested a trial. A bench trial in the circuit court was set for November 7, 2005. On the day of trial plaintiff filed an amended prayer for relief, asking for $50,000 in damages instead of $19,000. Defendant objected, and the trial court indicated to defendant it would grant a continuance if defendant so desired. Defendant elected to proceed to trial.

At trial, defendant Ed Woods testified that he has worked in the plumbing and heating business for 27 years, and operated his own business, Butch's Plumbing and Repair Service, for 9 ½

3

years. Defendant has gone to approximately twelve training classes on how to install in-floor heating. He was contacted by third-party defendant Brad Folkers in 1998 to install in-floor heating in a building that Folkers was working on in Galt, Illinois. Folkers contacted defendant three weeks prior to starting the job and provided defendant with the dimensions of the building. Defendant submitted his bid price of $6,000 to Folkers, who then called him back saying that plaintiff had accepted his bid. Defendant installed an in-floor heating system in an outdoor shed used for storage by plaintiffs. The system that defendant installed was designed by Kratchmer Treadway and the pipe used by defendant was made by the manufacturer Wirsbo. Defendant had received instruction on how to install Wirsbo pipe from the Wirsbo company itself, and the system was installed pursuant to Kratchmer Treadway's specifications. The heating system was controlled by two sets of controls. One control maintained the temperature on the boiler, and the thermostat controlled the pump which circulated the water. The boiler heated the liquid, which traveled through lines in the concrete, heating the floor. The boiler was heated through a liquid propane gas tank. At the time defendant finished the installation, the system was running properly. Folkers was never involved with defendant in putting in system. Defendant testified that when he finished, he gave his bill to Folkers to give to plaintiff. Plaintiff then made a check for $6,000 out to defendant and paid for the system.

Defendant did not put antifreeze into the system as it was not requested by plaintiff. Defendant testified that he asked Folkers if plaintiff wanted antifreeze in the system, and that Folkers, because of cost, said no. Therefore, defendant did not include antifreeze in the system. He never personally spoke to plaintiff about including antifreeze. In November 1998, defendant returned to the site and met with plaintiff's son, Duane Meyers, and learned that the system was working well, and that in fact the thermostat had to be turned down sometimes because it was too warm.

Defendant was not informed of any system failure until December 1999/January 2000. Defendant never discussed with Folkers what plaintiff's plans were for use of the building. At the time of the installation, nobody told him the building would be empty all winter. If he had known that the system would have been off all winter, he would have definitely used antifreeze or recommended it to plaintiff. He did leave a regular instruction manual with the boiler.

Brad Folkers, third-party defendant, testified that he was hired by plaintiff to pour a concrete floor in one of her farm buildings in Galt, Illinois. A friend of plaintiff's, Harold Packer, asked Folkers about using defendant to install an in-floor heating system. Folkers contacted defendant about the job and defendant indicated he would be interested. Folkers informed defendant the job would be for plaintiff. Folkers did not recall if defendant submitted the bid directly to plaintiff, Harold Packer, or himself, but testified that defendant was not working for him. Folkers testified that the agreement to work on the house was between defendant and plaintiff. He did not recall defendant ever asking him whether or not to include antifreeze in the in-floor heating system. If defendant had asked, he would not have been qualified to answer as he was not familiar enough with installing in-floor heating systems. Folkers testified that he never received a bill from defendant, so that defendant must have sent his bill directly to plaintiff or one of plaintiff's agents.

Plaintiff's grandson Trevor Meyers testified that sometime in December 1999/January 2000 he went to plaintiff's building and saw icicles hanging from the copper pipes that fed into the heating system. On the day he went to the building, it was five degrees below zero. The heating system had frozen up and become inoperable. At the time, plaintiff was in Florida. No one had checked on the building on a regular basis and he did not think the boiler was on at the time. Within a couple of months of discovering the problem, Trevor had a conversation with defendant where defendant

5

assured him there would be no problem with the pipes in the floor.

Plaintiff's son Duane Meyers testified that plaintiff could not be at trial due to her age and her suffering from dementia. Duane Meyers testified that defendant attempted to repair the system after the damage became known, but it was never fully repaired. Duane testified he has never spoken to defendant. Duane testified that the responsibility of keeping the propane tank filled with gas belonged to whoever was using the building at the time, either himself, Trevor, or plaintiff.

At trial plaintiff made use of three expert witnesses: Jerry Heaton, Dave Morgan, and Ken Neal. Jerry Heaton testified that he had been a plumbing and heating contractor for forty years. He had installed five to six floor heating systems in his career. He had in the past gone to seminars on in-floor heating, but had not gone to any on the Wirsbo tubing. The trial court found him to be qualified as an expert with regard to in-floor heating. Heaton testified that he had inspected the in-floor heating system in plaintiff's residence and found the system to be broken. Heaton testified that in a building situated like plaintiff's, an "out" building, he would always put antifreeze in the system. The contractor should always tell the customer up-front about the antifreeze option and tell them about freezing possibilities of which they may not be aware. Had he been the contractor, he would have put antifreeze in the system and figured it into the bid. Heaton said that if the customer had specifically told him not to put antifreeze in, he may not have done the job as the danger of freezing was too great. Heaton said it was standard operating practice to put antifreeze in this type of building and since it was not done, the job, in his opinion, was not done right.

Dave Morgan testified that he has been a licensed service plumber for John A. Loos and Sons Plumbing and Heating for three years and before that worked for Dalke Plumbing for four years and before that he had worked with Williams Brothers Plumbing for three years. Morgan received

6

training at Wirsbo for the in-floor heating system in Minnesota. Morgan had installed five to six in-floor heating systems over the past six years before trial. Morgan testified that he inspected plaintiff's outbuilding and found broken, frozen pipes under the floor and that the boiler was cracked and frozen. Morgan testified that antifreeze should have been used in a system like this to prevent freezing, The antifreeze Morgan would have used was glycol. Failure to put antifreeze in a system such as this would be "taking a chance" and defendant would have done a more workmanlike job if he had included antifreeze. The more antifreeze added the less efficient the heating system would be, but the protection against freezing would be greater. Morgan testified that if a 30% glycol solution had been in the system in December 1999/January 2000, even with no one continually running the system or if it had never been turned on, the system would not have frozen and broke.

Ken Neal testified that he estimates systems, engineers systems, and runs projects for John A. Loos and Sons Plumbing and Heating. He received a four year mechanical engineering degree from the University of Missouri at Rolla. He had personally designed three to four in-floor heating systems over the last three to four years and had overseen their installation. Neal inspected plaintiff's building and found that the piping was swollen and broken from freezing. Neal testified that antifreeze would have been an excellent choice for this particular building: an unattended building with a single source of propane which tends to run out if no one keeps an eye on it. Neal would have recommended a glycol at 30% for antifreeze. The system could have handled that amount of antifreeze. Neal testified that the overall work on the system was satisfactory, but to do a proper and workmanlike job, antifreeze should have been included. He concluded that the system would not have frozen had it contained antifreeze. Neal further testified that based on his on-site inspection of the in-floor heating system, the cost for repairing the heating portion only of the system would be

between $18,200 and $20,250. The cost of repair and concrete removal and replacement was $25,350. Finally, the cost of insulation installed in the concrete would be $4,400.

The trial court, after hearing all the evidence, found for plaintiff and third-party defendant Brad Folkers. Specifically, the trial court found that the parties could all agree this was a contract case. As such, there was no liability that could attach to Folkers as the contract was between plaintiff and defendant, with Folkers merely acting as the conduit for the deal. The court placed no relevance in whether or not Folkers may have said anything about antifreeze because Folkers had no expertise in the area.

The trial court found that defendant was supposed to put the system in and to do so in a workmanlike manner under Illinois law. The only question left to the trial court was whether a reasonable plumbing and heating person would put glycol in the system. The circumstances of this particular building (that it was an "out" building in the northern Illinois climate where any number of things could cause the system to shut down) called for antifreeze to be used. The trial court found that based on the evidence, defendant did not do his job in a workmanlike manner when he failed to add glycol. Defendant knew the situation of the building and knew, or at least should have inquired, that plaintiff would not be using the building all that often. The trial court found that the failure to use antifreeze led to the freezing and breaking of the system and that defendant's failure to add antifreeze resulted in the breach of his implied warranty to plaintiff to do the job in a workmanlike manner. The trial court determined the cost of repair through evidence presented by plaintiff, and taking the lowest estimates for cost of repair, awarded plaintiff damages of $33,150.00.

Defendant filed a motion to reconsider judgment on December 14, 2005, contending that: 1) the evidence did not support the court's judgment that defendant's breach was the proximate cause

8

of the damages; 2) the evidence did not support the judgment that defendant was found not to have performed his job in a workmanlike manner by failing to inform plaintiff about how to operate the system and 3) defendant was prejudiced by the court allowing the amended damages on the day of trial. The trial court denied the motion to reconsider, citing: 1) the court's determination that defendant did not perform installation of the in-floor heating system in a workmanlike manner by failing to install antifreeze in the system was fully supported by the evidence, including testimony from Heaton, Morgan, and Neal; 2) the evidence showed that more-likely than not, the in-floor heating system would not have frozen and been damaged if antifreeze had been installed regardless of whether the system was turned on; 3) plaintiff established her damages proximately caused by defendant's improper installation with sufficient certainty through the testimony of her witnesses; and 4) defendant waived any potential prejudice from plaintiff's Motion to Amend the Prayer for Relief by refusing the court's offer of a continuance and electing to proceed to trial on November 7, 2005. Defendant now appeals.

ANALYSIS

Defendant raises issues as to the original plaintiff and in addition raises issues in regard to the third party defendant. We will address these issues in turn.

First, defendant contends that as to all parties the trial court erred when it found the action to be a contract case instead of a negligence case, when plaintiff appeared to plead negligence in her complaint. Plaintiff argues that this issue is waived as defendant failed to raise it at trial or in any post trial motion. We find waiver.

Here, just before issuing its ruling the trial court seems to indicate there was an off the record discussion between itself and counsel concerning issues involving the mixing up of tort and contract

9

theory. The trial court went on to say "[h]owever, when it comes down to it, the parties seem to be in agreement that this is indeed a contract case. It's not a negligence case." The record indicates that defendant never raised with the trial court in any post-trial motion the issue that the trial court was in error in finding that this was a contract case as opposed to a negligence case. In fact, it appears from the statement of the trial court that defendant agreed that this was a contract action, not a negligence action. A party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding. McMath v. Katholi, 191 Ill.2d 251, 255, 730 N.E.2d 1,3 (2000). A party cannot complain of error which he induced the court to make or to which he consented. McMath, 191 Ill.2d at 255, 730 N.E.2d at 3. The rationale for this rule being that it would be manifestly unfair to allow a party a second trial upon the basis of error which he injected into the proceedings. McMath, 191 Ill.2d at 255, 730 N.E.2d at 3. As such, the issue is waived on appeal.

Although the issue has been waived, substantively it has been established in Illinois that recovery generally cannot be had in tort for what is termed purely economic loss. Moorman Manufacturing Company v. National Tank Company, 91 Ill.2d 69, 435 N.E.2d 443 (1982). Economic loss has been defined as damages for inadequate value and/or costs of repair. Moorman, 91 Ill.2d at 82, 435 N.E.2d at 443. The defendant is mistaken when he seeks to assert that the cause of action is a tort based theory of recovery, where plaintiff is suing the defendant for not performing the contract in a workmanlike manner.

Illinois courts have rejected a tort cause of action in cases where a construction contract is breached because the work was not performed in a workmanlike manner. Our supreme court has held that when a plaintiff seeks recovery for faulty construction alleging the defendant failed to

10

perform in a workmanlike manner, which resulted in eventual deterioration and the losses alleged are solely economic, there can be no recovery under a negligence theory. Foxcroft Townhome Owners Association v. Hoffman Rosner Corporation, 96 Ill.2d 150, 156-57, 449 N.E.2d 125, 128 (1983). Thus, even if the issue were not waived, the trial court's decision finding the cause to arise under contract is affirmed. In Illinois, tort-based theories of recovery are generally inappropriate if the damages suffered are purely economic and the subject matter of contract.

Defendant is challenging the trial court's rulings on the merits as to plaintiff's claims against defendant and defendant's claims against third party defendant following a bench trial. Plaintiff claims against defendant are that defendant breached their contract to install the in-floor heating system in a workmanlike manner, leading to damages suffered by plaintiff, and defendant asserts against third-party defendant Folkers that Folkers and he (the defendant) had a contract and that Folkers, acting as the general contractor in a general/subcontractor relationship, informed defendant that plaintiff did not want antifreeze used in the system and thus the third-party defendant is actually responsible for any loss. The applicable standard of review in such a case is whether the ruling of the trial court was against the manifest weight of the evidence. A trial court's judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence. Dargis v. Paradise Park Inc., 354 Ill.App.3d 171, 177, 819 N.E.2d 1220, 1227 (2004).

The four remaining issues on appeal are: 1) whether the trial court erred in finding a contractual relationship between defendant and plaintiff, and whether the trial court erred in not finding a contractual relationship between defendant and third-party defendant; 2) whether the trial court erred in qualifying as experts plaintiff's witnesses Heaton, Morgan, and Neal; 3) whether the

11

trial court erred in finding that defendant's failure to use antifreeze in the heating system was a breach of warranty to perform in a reasonably workmanlike manner; and 4) whether damages were proven appropriately.

Defendant first argues that the trial court erred when it found a contractual relationship existed between defendant and plaintiff and in addition defendant asserts that any contractual relationship was between himself and third-party defendant. In support of his argument, defendant alleges that the contractual relationship existed between defendant and third-party defendant, as subcontractor and general contractor respectively. Defendant asserts that at no point did any contract exist between himself and plaintiff.

In a breach of contract action, plaintiffs must first show that an offer, acceptance, and consideration had been made to establish a valid contract. Brown and Kerr, Inc. v. American Stores Properties, Inc., 306 Ill.App.3d 1023, 1030, 715 N.E.2d 804, 810 (1999). As there is no dispute as to the consideration, the focus of our inquiry here will be the offer and acceptance. Here, the trial court found that the acts and words of the plaintiff, defendant, and third party defendant Folkers were enough to establish a valid contract between plaintiff and defendant. We agree with the trial court.

Plaintiff's friend, Harold Packer, was the first to ask Folkers about using defendant. Folkers then told defendant about the project and asked him if he would be interested in doing the in-floor heating system. Defendant then submitted a bid to Folkers to do the job for $6,000. Folkers testified that he could not remember if defendant gave the bid to himself, plaintiff, or Packer, but he did testify that defendant did not work for him and the agreement to do the in-floor heating was between defendant and plaintiff. Either way, an offer had been made from defendant to plaintiff to install the in-floor heating system for $6,000. All that was left was for plaintiff to accept. Folkers then

12

communicated plaintiff's acceptance to defendant. Consideration came in the form of defendant installing the in-floor heating system in exchange for $6,000 payment from plaintiff.

Defendant argues that, at the most, there was only a contract between himself and Folkers and that this relationship was a general contractor/sub contractor relationship. At trial it was adduced that Folkers was only pouring the concrete for the building, not overseeing the project. The trial court noted that Folkers acted merely as a conduit to facilitate the agreement between plaintiff and defendant. Also, defendant was paid directly by plaintiff with a check that plaintiff signed. Although there was no formal written contract between plaintiff and defendant, the trial court found the facts indicated the existence of a valid contract to install the heating system for $6,000 did exist between plaintiff and defendant, but the facts did not indicate a general contractor-sub-contractor contractual relationship between defendant and Folkers. See Brown and Kerr, Inc., 306 Ill.App.3d at 1030, 715 N.E.2d at 810. The trial court based its decision on the facts before it and its decision was neither unreasonable nor arbitrary. Therefore, we find that the trial court's determination of no liability on the part of third-party defendant Folkers was not against the manifest weight of the evidence. The trial court's decision that the contract was between plaintiff and defendant and that there was no contractual relationship between defendant and third-party defendant is affirmed.

Defendant next asserts that the trial court abused its discretion by allowing Heaton, Morgan, and Neal to testify as expert witnesses. A ruling on the admissibility of expert testimony will not be reversed absent an abuse of discretion. Gaston v. Founders Insurance Company, 365 Ill.App.3d 303, 324, 847 N.E.2d 523, 540 (2006). Whether a witness is allowed to testify as an expert is in the sound discretion of the trial court. Chem-Pac, Inc. v. Simborg, 145 Ill.App.3d 520, 524, 495 N.E.2d 1124, 1126 (1986). Expert testimony is not limited to scientific or technical areas, but rather all areas of

13

specialized knowledge. Chem-Pac, Inc., 145 Ill.App.3d at 524-25, 495 N.E.2d at 1127. All that is required of the expert testimony is that it be of some assistance to the trier of fact. Chem-Pac, Inc., 145 Ill.App.3d at 525, 495 N.E.2d at 1127.

In the present case, the expert witnesses testified regarding the issue as to whether defendant performed the contract in a reasonably workmanlike manner as should a generally proficient contractor engaged in similar work and performing under similar circumstances. Each of the three witnesses testified to extensive training and experience installing in-floor heating systems. Heaton testified that he had been a plumbing and heating contractor for forty years, installed five to six floor heating systems in his career and had gone to seminars on in-floor heating. Morgan testified that he had been in the plumbing business for ten years, received training on this specific type of in-floor heating system in Minnesota, and had installed five to six in-floor heating systems in the six years before trial. Finally, Ken Neal testified that he engineers systems for John A. Loos and Sons Plumbing, has a four year mechanical engineering degree from the University of Missouri at Rolla, and has personally designed three to four in-floor heating systems over the last three years and had overseen their installation. The trial court found that the testimony of these men would better help him understand the evidence and make a decision. We cannot say the trial court abused its discretion by qualifying them as experts.

Defendant next contends that the trial court erred when it found that his failure to add antifreeze to the in-floor heating system constituted a breach of the contract's implied warranty of reasonable workmanship. A person who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner, and the failure to do so results in a breach of contract. Zielinski v. Miller, 277 Ill.App.3d 735, 740, 660 N.E.2d 1289, 1293 (1995). When a

14

contractor represents to someone that he is skilled at performing a particular task and installs the system himself, he warrants that the work done by him will be done in reasonably workmanlike manner.  See <u>Dean v. Rutherford</u>, 49 Ill.App.3d 768, 771, 364 N.E.2d 625, 627 (1977).

Here, the trial judge made the determination, after hearing all the evidence, that the work was not done by defendant in a reasonably workmanlike manner.  The trial court noted  that defendant had installed in-floor heating systems before and knew that antifreeze would be necessary in a system that was in an "out-building", would not be occupied, and was exposed to the cold northern Illinois winters.  He never inquired as to how often the building would be used.  Whether or not he asked Folkers about using antifreeze is irrelevant, as the trial court found that Folkers had no expertise in the area.

Further, the trial court heard testimony from three witnesses it qualified as experts.  Heaton, Morgan, and Neal all had years of experience and education regarding in-floor heating systems.  They all testified that under the building conditions, antifreeze should have been added to the system. Heaton said the installer should always tell the customer up-front about the antifreeze option and the danger of freezing in an out building, something defendant did not do.  Heaton went so far as to say that if he were presented with similar circumstances as in the instant case, and the customer declined antifreeze, he would refuse the job.  Heaton concluded the job was not done right.  Morgan testified that not using antifreeze in this type of job was "taking a risk" and that the job would have been done in a more workmanlike manner if it had included antifreeze.  Neal testified that he would have used antifreeze.  He further stated that the overall work was satisfactory, but because antifreeze was not used, a proper and workmanlike job was not done.  Based on all the testimony and evidence presented, the trial court concluded that a reasonable installer would have used antifreeze under the

15

circumstances, that a workmanlike job was not done, and thus the implied warranty had been breached by defendant. The weight to be given to the expert testimony is for the trier of fact to determine. Topp v. Logan, 197 Ill.App.3d 285, 298, 554 N.E.2d 454, 463 (1990). Under the evidence in the record, we cannot say the trial court's decision was against the manifest weight of the evidence.

Defendant on appeal also contends that the trial court erred in allowing plaintiff's amended prayer for relief on the day of trial, which raised the amount of relief requested from $19,000 to $50,000. We find that defendant has waived any error regarding the amendment. Again, a party cannot complain of error which he induced the court to make or to which he consented. McMath, 191 Ill.2d at 255, 730 N.E.2d at 3.

The record establishes that the trial court asked defendant if he would like a continuance to reconstruct his case if he were surprised by the amendment. Defendant, in the trial court's words, "eschewed" that option and elected to proceed to trial. Defendant raised this issue in his post-trial motion to reconsider, and the trial court rejected it noting that defendant waived any potential prejudice by refusing the trial court's offer of a continuance. We agree with the trial court. Defendant cannot now claim prejudice by surprise when he himself had the opportunity to cure that surprise by taking the trial court's offer of a continuance. If there was any error here, defendant consented to it by refusing the continuance. We find this issue to be waived.

The ordinary rule applied in building contract cases is that a builder is held only to a duty of substantial performance in a workmanlike manner, and that failure to perform in a workmanlike manner constitutes a breach of contract entitling the plaintiff to damages. Mayfield v. Swafford, 106 Ill.App.3d 610, 612, 435 N.E.2d 953, 954 (1982). Thus, once a breach of contract has been found

16

by the defendant's failure to perform in a workmanlike manner, the issue then becomes calculation of damages.

In his brief defendant argues that damages were not proven with any reasonable degree of certainty. Defendant argues that his failure to include antifreeze did not cause the damages, but rather it was plaintiff's failure to keep the system running that caused damages. However, plaintiff's experts all opined that had antifreeze been used, there would not have been damage to the system. The trial court findings of breach and damages are not against manifest weight of evidence, given the circumstances as described above. The fact that plaintiff suffered damages caused by breach of contract to perform in a workmanlike manner is not against the manifest weight of the evidence. The fact that plaintiff suffered damages which were natural consequences of this type of breach was based on the evidence at trial and not speculative in nature. Gordon v. Bauer, 177 Ill.App.3d 1073, 532 N.E.2d 855 (1988).

For the foregoing reasons, we affirm the decision of the trial court. Justice Carter would have this court raise sua sponte the issue of the proper calculation of damages. We have chosen not to address the issue for the following reasons.

As the dissent correctly notes, in a construction or building contract, when there has been a breach of the contract based upon defective workmanship, the general measure of damages is the cost of repairing the defects and/or completing the project. Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc., 288 Ill. App. 3d 1080, 1082 (1997). However, as the dissent also notes, where repairs would (1) entail substantial tearing down of the builder's work or unreasonable destruction of the builder's work and/or (2) the costs are unreasonably disproportionate to the benefit of the purchaser (of which the price of the contract is a part), the measure of damages is determined by the

17

diminution in value of the property as a result of the defects. <u>Arch of Illinois</u>, 288 Ill. App. 3d at 1083.

Here, evidence was presented and argument was made before the trial court that the plaintiff was entitled to damages calculated based upon the cost of repair. On appeal, the appellant raised the issue of fault but did not contest the method of calculating damages. However, the dissent would raise the issue for the appellant, find that the appellant should have raised the issue in the court below, and then remand the matter for the appellant to do just that. We do not agree that this would be proper.

First, we see no authority for raising the issue of the proper measure of damages <u>sua</u> <u>sponte</u>. The appellant did not raise the issue of the proper measure of damages before this court. In fact, neither party even raised this issue in the trial court below. The dissent cites <u>City of Wyoming v. Liquor Control Commission</u>, 48 Ill. App. 3d 404 (1977), and Supreme Court Rule 366 for the proposition that "a reviewing court may, in the exercise of its responsibility for a just result, ignore considerations of waiver and decide a case on grounds not properly raised or not raised at all by the parties." <u>City of Wyoming</u>, 48 Ill. App. 3d at 407-08. However, as the dissent notes, but then ignores, in <u>City of Wyoming</u>, the issue addressed by the appellate court was raised before the Commission and in a reply brief. The court in <u>City of Wyoming</u> relied upon <u>Occidental Chemical Co. v. Agri Profit Systems, Inc.</u>, 37 Ill. App. 3d 599, 603 (1975), a case where the appellate court addressed an issue raised for the first time in a reply brief and addressed by the appellee in a petition for rehearing. <u>Occidental Chemical</u>, 37 Ill. App. 3d at 603. Relying upon Rule 366 and <u>Hux v. Raben</u>, 38 Ill. 2d 223, 224-25 (1967), the <u>Occidental Chemical</u> court found that it could address the issue raised for the first time in a reply brief.

18

Hux v. Raben is instructive on the matter. In Hux, the plaintiff brought an action for specific performance of an option contract for the sale of 440 acres of land. The circuit court entered a decree directing the defendants to convey the property to the plaintiff. On appeal, the appellate court reversed the trial court, holding that the contract was not sufficiently definite and certain to support a decree of specific performance, a matter which had not been raised by either party. The purchasers then appealed to our supreme court, which expounded upon the meaning of Rule 366. The court noted that "the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." Hux, 38 Ill 2d at 225. However, the court then noted that there are limitations on a reviewing court's power to raise issues on its own. As the Hux court pointed out: "[A]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at trial." Hux, 38 Ill. 2d at 225.

Here, the dissent seems to ignore the admonition in Hux that new theories or questions not be considered where proof might have been presented at trial. The dissent recognizes that such proofs were not presented at trial and wants to send the matter back for further proofs. Such is not permitted under Rule 366 as interpreted by our supreme court in Hux.

We would also note that the dissent has misconstrued the relationship between the two measures of damages. As the Arch Illinois court points out, "the usual measure of damages is the cost of correcting the defects and the diminution-in-value method applies only if it [is found] that one of the two exceptions exist." Arch Illinois, 288 Ill. App. 3d at 1082-83. Here, there was no specific finding by the trial court that either of the exceptions permitting consideration of the diminution-in-

19

value method were present. The dissent, conducting its own examination of the record, concludes that such a finding should have been made. However, in light of the guidance from our supreme court in Hux, we maintain that this court should refrain from attempting to fix the record created by the parties and would limit our ruling to the issues presented to us.

For the foregoing reasons, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

SCHMIDT, J., concurs.

JUSTICE CARTER, concurring in part and dissenting in part:

Because I agree with the majority's affirmation as to finding defendant breached the contract, I partially concur with the majority opinion. However, because I disagree with the majority's decision not to remand the cause for further proceedings at the trial court level with regard to the issue of damages, I must partially dissent. The issue of damages is important because the plaintiff Meyers failed to meet her burden of proof on the issue of damages.

In his brief and at trial, defendant did object to the amended complaint for damages as a pleading matter and claimed the damages were speculative and not caused by the breach. Although I would agree with the majority that as a pleading matter the issue is waived, I would reach the issue of the proper calculation of damages in the interests of justice. To recover damages, the burden is on the plaintiff to establish damages resulting from defendant's breach of contract. Oakleaf of Illinois v. Oakleaf & Associates Inc., 173 Ill.App.3d 637, 646-47, 527 N.E.2d 926, 933 (1988). The calculation of damages is a fundamental element in breach of contract cases. See Village of South Elgin v. Waste Management of Illinois, Inc., 348 Ill.App.3d 929, 939, 810 N.E.2d 658, 669 (2004). When appropriate, an appellate court may remand a cause to the trial court for a determination of

20

damages in the interests of justice. For example, when there had been a proper determination of liability in a breach of warranty of habitability case, but an improper calculation of damages, the reviewing court affirmed the trial court's judgment on the question of liability, but remanded the cause to the trial court for a new trial on the damages issue only. Park v. Sohn, 89 Ill.2d 453, 465, 433 N.E.2d 651, 657 (1982). In the instant case, there was error in calculating damages because the only evidence presented by the parties was on the cost of repair.

As stated above, the burden is on the plaintiff to prove damages resulting from the defendant's breach of contract. Oakleaf, 173 Ill.App.3d at 646-47, 527 N.E.2d at 933. Not only must the plaintiff prove damages, however, but the plaintiff also has the burden to prove the correct measure of damages. See Ollivier v. Alden, 262 Ill.App.3d 190, 634 N.E.2d 418 (1994); First National Bank of Elgin v. Dusold, 180 Ill.App.3d 714, 536 N.E.2d 100 (1989). In Ollivier, a real-estate sales contract contained a provision whereby the seller guaranteed that the roof and basement were free of leaks and that all utilities were in good working order at the time of closing. Ollivier, 262 Ill.App.3d at 193, 634 N.E.2d at 420. However, after the closing, it was discovered that leaks remained and had not been fixed. The plaintiffs filed a complaint alleging, among other things, breach of contract, but the trial court soon thereafter granted the defendant's motion for summary judgment on the breach of contract count. Ollivier, 262 Ill.App.3d at 193-94, 634 N.E.2d at 421. On review, the appellate court noted that the defendants clearly did breach the section of the contract guaranteeing no leaks, and that the plaintiffs were entitled to demonstrate what damages they suffered as a result of the breach, and that therefore, summary judgment on that matter was inappropriate. Ollivier, 262 Ill.App.3d at 196, 634 N.E.2d at 422. In support of this holding, the court wrote that:

"[i]n determining damages, it is fundamental that a monetary award should, to the extent

possible, put the nonbreaching party in the position he would have been in had the contract been performed. As the party seeking to recover, the plaintiff bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement. One measurement of damages often applied in breach of warranty cases is cost of repair. However, a plaintiff is not entitled to a windfall." Ollivier, 262 Ill.App.3d at 196, 634 N.E.2d at 422-23.

The court thus reversed the trial court's granting of summary judgment, and held that the plaintiffs must "demonstrate on remand that they suffered damages directly linked to those deficiencies that arose within the first six months after closing and not beyond. They are not entitled to the cost of permanent repair or replacement, but rather the loss of value for the first six months of the closing." Ollivier, 262 Ill.App.3d at 196-97, 634 N.E.2d at 423.

In First National Bank of Elgin v. Dusold, the trustee and owners of residential real estate brought an action for damages to the residence and various appliances and fixtures found therein, alleging breach of warranty by conveyor of interest in premises. Dusold, 180 Ill.App.3d at 714, 536 N.E.2d at 100. The trial court awarded damages for plaintiff, entering judgment for plaintiff in the amount of $3,557.97. Dusold, 180 Ill.App.3d at 716, 536 N.E.2d at 101. The trial court set forth the basis for its determination of damages:

"'The only evidence that is admissible in this sort of a proceeding is evidence by a competent expert to show the fair market value at the date of the occurrence, or what the useful life of any appliance might be, or the replacement value at the time of the occurrence.

Without that expert testimony, I have to rely on the replacement cost as exhibited in the

22

exhibits that have been presented by the complaining witness at this time; unless you are prepared to bring in an expert today to tell me what the fair market value, having looked at it, of that particular appliance is, or what the replacement value of that particular appliance is based on date of acquisition and date of replacement.'" Dusold, 180 Ill.App.3d at 717, 536 N.E.2d at 102.

On review, the appellate court noted that the burden of proof regarding the correct measure of damages was on the plaintiff, not the defendant, as placed by the trial court. Dusold, 180 Ill.App.3d at 718, 536 N.E.2d at 103. At trial, plaintiff replaced all the kitchen appliances claimed to be defective with new appliances, but no evidence was ever admitted as to whether any of the appliances were capable of repair or the cost of repairs. Dusold, 180 Ill.App.3d at 718, 536 N.E.2d at 103. The court noted that even if the trial judge accepted the claim that the appliances were not repairable, lack of testimony concerning the condition and fair market value of the property at the time of delivery is fatal to any action to recover for its loss. Dusold, 180 Ill.App.3d at 719, 536 N.E.2d at 193. The court found that to award the plaintiff the cost of new items as replacement cost was to award the plaintiff a windfall and puts plaintiff in a much better position than if the contract had been performed and the appliances had been in working order. Dusold, 180 Ill.App.3d at 719, 536 N.E.2d at 193. Consequently, the appellate court substantially reduced the portion of the judgment by the cost for the new appliances. Dusold, 180 Ill.App.3d at 719, 536 N.E.2d at 193. Further, the appellate court reversed the trial court's award of $839 for miscellaneous repairs as not being supported by the evidence, noting that it was the plaintiffs' burden to establish a reasonable basis for computation of the damages. Dusold, 180 Ill.App.3d at 719-20, 536 N.E.2d at 103-04.

In Witty v. C. Casey Homes, Inc.,102 Ill.App.3d 619, 430 N.E.2d 191 (1981), the first issue

presented was the proper measure of damages for a breach of a building contract. Witty, 102 Ill.App.3d at 623, 430 N.E.2d at 194.The trial court had found that there was a breach of contract, however the trial court entered judgment in the defendant's favor because the plaintiff's proposed measure of damages, cost of repair, was impractical and plaintiffs had introduced no evidence that the defective brick had diminished the value of the home. Witty, 102 Ill.App.3d at 623-24, 430 N.E.2d at 194-95. In that case the cost of repair and replacement of defective material almost approximated the original contract price. Witty, 102 Ill.App.3d at 623, 430 N.E.2d at 194. Therefore, the trial court indicated that diminution in value was the proper measure of damages, not cost of repair. The plaintiff had failed to introduce any evidence of diminished value. Therefore, the trial court had entered judgment, despite the breach, for the defendant. That judgment was affirmed by the appellate court. Witty, 102 Ill.App.3d at 624, 430 N.E.2d at 195. In other words, the plaintiff failed to meet its burden of proof. Likewise in the instant case, plaintiff introduced no evidence on diminution in value in a case where the trial court's award of damages was over five times the original contract price.

As evinced from the cases noted above, the burden is on the plaintiff to prove damages and the proper measure of damages. In a construction or building contract, when there has been a breach of the contract based on defective workmanship, the general measure of damages is the cost of repairing the defects and/or completing the project. Arch of Illinois, Inc. v. S.K. George Painting Contractors, Inc., 288 Ill.App.3d 1080,1082, 681 N.E.2d 1049, 1050 (1997). However, where the repairs would (1) entail substantial tearing down of the builder's work or unreasonable destruction of the builder's work and/or (2) the costs are unreasonably disproportionate to the benefit of the purchaser (of which the price of the contract is a part), the measure of damages is determined by the

24

diminution in value of the property as a result of the defects. Arch of Illinois, 288 Ill.App.3d at 1083, 681 N.E.2d at 1051. See Castricone v. Michaud, 223 Ill.App.3d 138, 583 N.E.2d 1184 (1991). Diminution in value is not the proper measure of damages in cases where there has been willful violation of the contract. Kangas v. Trust, 110 Ill.App.3d 876, 441 N.E.2d 1271 (1982). In the instant case, there has been no willful violation of the contract. The foregoing rule has been recognized and explained in the Restatement (Second) of Contracts § 348 (1981) and cited by Illinois courts. See Mayfield v. Swafford, 106 Ill.App.3d 610, 435 N.E.2d 953 (1981); Village of Pawnee v. Azzarelli Construction Co., 183 Ill.App.3d 998, 539 N.E.2d 895 (1989). Thus, the proper measure of damages in the instant case is the remedial cost to bring the structure into compliance with the contract or the difference in value of the structure as constructed and its value had it been constructed without defects, whichever is less, if the tearing down is unreasonably disproportionate to the contract price. As suggested by Justice Cardozo, an owner is entitled to the money which would permit him to have a contract fully performed in a workmanlike manner unless the cost of those repairs is grossly or unfairly out of proportion to the good attained. Jacobs & Young, Inc. v. Kent, 230 N.Y. 239, 244, 129 N.E. 889, 891 (1921).

The record reveals that to prove damages plaintiff cited the cost of repair, that being the cost of removing the old system and installing the new one. In calculating how much to award plaintiff, the trial court was presented only with the cost of repair. The evidence established that the cost of repairs proof was not speculative and was a foreseeable result of the breach. However, the evidence indicated that the repair would entail substantial tearing down of defendant's work. If that tearing down is unreasonably disproportionate to the contract price, the proper measure of damages would be determined by the diminution in value of the out building resulting from the defects. Arch of

25

Illinois, 288 Ill.App.3d at 1083, 681 N.E.2d at 1051. The contract price was for $6,000, while the damages award was for $33,150. These facts raise the question whether those costs are far beyond what defendant could have contemplated at the time of the contract's making and whether the cost to correct the defects is unreasonably disproportionate in relation to the benefit to the purchaser or unfairly out of proportion to the good to be attained. See Arch of Illinois, 288 Ill.App.3d at 1083, 681 N.E.2d at 1051. The damages issue should be left to the fact finder to decide under all the circumstances. If the cost of repair is unreasonably disproportionate, the proper measure of damages would be the difference in value between the building had the work been properly performed under the contract and the value of the building as it stands now the way the work was actually performed. Arch of Illinois, 288 Ill.App.3d at 1083, 681 N.E.2d at 1051.

I realize that no objection was made at trial to the method used to calculate damages, nor was the issue raised directly on appeal by either party. However, the issue of waiver is a limitation on the parties and not on the court, which has the responsibility to reach a just decision, and a reviewing court may, in the exercise of its responsibility to reach a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties. Occidental Chemical Company v. Agri Profit Systems, Inc., 37 Ill.App.3d 599, 603, 346 N.E.2d 482, 485 (1975); Bloome v. Wiseman, Shaikewitz, McGivern, Wahl, Flavin, and Hesi, P.C., 279 Ill.App.3d 469, 483, 664 N.E.2d 1125, 1134 (1996); See Hux v. Raben, 38 Ill.2d 223, 225, 230 N.E.2d 831, 832 (1967); See also Champaign National Bank v. Landers Seed Co., Inc., 194 Ill.App.3d 1019, 551 N.E.2d 1122 (1990); City of Wyoming v. Liquor Control Commission of Illinois, 48 Ill.App.3d 404, 362 N.E.2d 1080 (1977). The appellate court may review any error of law affecting the judgment or order appealed from, S. Ct. R. 366(b)(1)(I) (134 Ill.2d R. 366(b)(1)(I) (West 2004), and upon

review make any judgment or order, including remand, that ought to have been given or made. S. Ct. R. 366(a)(5) (134 Ill.2d R. 366(a)(5)) (West 2004). As this court stated in City of Wyoming v. Liquor Control Commission of Illinois, 48 Ill.App.3d 404, 362 N.E.2d 1080 (1977), "...a reviewing court may, in the exercise of its responsibility for a just result, ignore consideration of waiver and decide a case on grounds not properly raised or not raised at all by the parties." City of Wyoming, 48 Ill.App.3d at 407-08, 362 N.E.2d at 1083. (The court did note in City of Wyoming that the issue, although not raised at the circuit court level or in the appellant's brief, was the issue before the Liquor Commission and was raised in a reply brief). Contrary to the majority's discussion on Hux v. Raben, I feel Hux endorses my position on ignoring waiver, when to do so would be in the best interests of justice and would maintain a sound and uniform body of precedent. Hux, 38 Ill.2d at 225, 230 N.E.2d at 832.

I would therefore remand this matter to the trial court to determine based on all the circumstances the issue of whether or not repair cost is unreasonably disproportionate to the contract price, and if it is, then whether the diminution in value of the structure is the proper measure of damages. Contrary to the majority's assertion that I have decided for the trial court which measure of damages should apply, I would merely remand for the trial court to determine, in a hearing, what is the proper measure of damages after both sides have presented proof on the matter. In this case, to do otherwise rewards a plaintiff who failed to meet her burden of proof and ignores the proper legal standard for contract measure of damages. Thus, I would reverse the damages award of the trial court and remand for further proceedings on the measure of damages. Rendering the decision in this manner, I believe, would do justice to the parties and allow both sides on remand to present appropriate proofs and arguments to the trial court. As the majority does not do this, I must

27

respectfully dissent.