2017 IL App (3d) 160231

Opinion filed August 15, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as Subrogee of Timothy W. Schreiber, | ) ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Tazewell County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-16-0231 Circuit No. 15-SC-86 |
| WILLIAM WELBOURNE, d/b/a Welbourne Builders, Inc., | ) ) ) | The Honorable Michael Risinger, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Holdridge concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1        Plaintiff, State Farm Fire and Casualty Company (State Farm), as subrogee of Timothy W. Schreiber, brought a small claims case in Tazewell County circuit court against defendant, William Welbourne, doing business as Welbourne Builders, Inc., for negligent roof repair. After a bench trial, the trial court ruled in favor of State Farm on its negligence claim. Welbourne filed a motion to reconsider, which the trial court denied. Welbourne appeals. We affirm the trial court's judgment.

¶ 2                                                        FACTS

¶ 3         In April 2009, Schreiber hired Welbourne to repair a leaky roof on Schreiber's home in

Groveland, Illinois. As part of the roof-repair work, Welbourne replaced the top layer of shingles

and four roof vents. The work was completed later that same month and was paid for by

Schreiber in full. Pursuant to the parties' agreement, Welbourne guaranteed the "workmanship"

on the "top roof" to Schreiber for a period of two years.

¶ 4         About a year and a half later, in December 2010, Schreiber discovered that the roof was

leaking in a different area than before and that the inside of his house had suffered some water

damage from the leak. Schreiber called Welbourne and reported the problem. Welbourne went to

the home on December 27, 2010, to inspect the roof but was unable to do so because the roof

was covered with snow and ice. Welbourne returned to the home on January 2, 2011. When

Welbourne inspected the home at that time, he saw snow and ice buildup around one or more of

the four roof vents, which he determined was the cause of the leak. On January 3, 2011,

Welbourne replaced the four vents at his own cost and installed ice guards around the vents.

Since that time, Schreiber has not had any further rooftop leaks to his home.

¶ 5         Schreiber asked Welbourne to pay for the damage that the leak had caused to the inside

of the home, but Welbourne refused. Schreiber later filed a claim with his insurance company,

State Farm, for the damage. State Farm paid $4650.01 to have the water damage to the inside of

the home repaired. In addition, Schreiber paid a $500 deductible on the work that was done to

repair the inside of the home.

¶ 6         In January 2015, State Farm, as the subrogee of Schreiber, filed a small claims case in the

trial court against Welbourne. In the complaint, State Farm alleged that Welbourne's negligence

in repairing the roof led to the water damage. Welbourne denied that he was negligent and

claimed or stated that the leak was caused by an unnatural accumulation of snow and ice, which had accumulated around the roof vents because of the heat coming out of the attic and the lack of ice guards on the house around the vents.

¶ 7     At some point prior to the trial in this case, the trial court distributed to the parties' attorneys a document titled "[s]mall [c]laims bench trial procedure." The document stated as follows:

> "The Court conducts all small claims bench trials under IL Supreme Court Rule 286b [(Ill. S. Ct. R. 286(b) (eff. Aug. 1, 1992) (allowing the trial court in a small claims case to adjudicate the dispute in an informal hearing with the rules of evidence and rules of procedure relaxed))]. That means the rules of evidence are relaxed and the Court does all the questioning. I like pictures; I like documents. If a picture or document applies to your case, bring 3 copies (one for me, one for you, one for your opponent). You further are instructed to write (type) out your evidence (similar to a term paper or lawyer's brief). Again bring 3 copies of your written statement of evidence (one for me, one for you, one for your opponent). If within your written statement of evidence you refer to something a person said, that person will need to be present on the trial date to be sworn-in and agree to what you said he/she said. At trial, I will read both statements of evidence and ask any questions that I have, then render a decision.
>
> If you get your written statement of evidence done a few days before the trial, please email it to my clerk (or drop it off) at [the court's email address]. Be sure to send your opponent a copy at the same time."

¶ 8    In December 2015, an informal bench trial was held pursuant to the directions that the trial court had previously given the attorneys. As the trial court had requested, both sides submitted written statements of the evidence/facts to the court, along with any photographs or documentation that they had. The trial court questioned each of the attorneys as to what the evidence in the case would show, including what the testimony of each of their respective clients/witnesses would be. After the questioning of the attorneys had concluded, the two main witnesses—Schreiber and Welbourne—acknowledged in court that they were adopting the representations of their attorneys as their testimony in the case. The trial court also listened to the closing arguments of the attorneys. During closing argument, Welbourne's attorney argued, among other things, that State Farm was trying to "bootstrap a contractual economic damage claim into a negligence claim and grab consequential damages which [were] not available in that type of action."

¶ 9    After listening to the arguments of the attorneys, the trial court took the case under advisement. The trial court later issued a written decision, ruled in favor of State Farm on its claim of negligence, and entered judgment in favor of State Farm for $5150.01 plus costs. In making its ruling, the trial court stated:

> "*** No evidence has been presented to show what was the unnatural accumulation nor does the Court recall from its own experience a recent situation that could be considered an unnatural accumulation. This is Central Illinois. We get snow every winter—sometimes several inches on the same day, sometimes only a few inches. Res Ipsa Loquitur.

*** It is agreed that replacing the roof vents with roof-vents-with-ice-guards has stopped the leaks. Welbourne installed the roof vents and the roofing around the roof vents that leaked."

¶ 10    Welbourne filed a motion to reconsider but did not re-raise his economic loss doctrine argument in that motion. A hearing was held on the motion to reconsider in April 2016. At the conclusion of the hearing, the trial court denied the motion. In so doing, the trial court explained its reasoning as follows:

"Homeowner hired Mr. Welbourne to replace the roof because he had a leak. Let's just say on the left side of the house. Mr. Welbourne replaced the roof. As part of replacing the roof, Mr. Welbourne replaced also four vents in the roof, and then a year-and-a-half later, in 2011, during the winter, another leak was discovered, this time in the right side of the house, the opposite side of the house where the leak originally had occurred for which the homeowner hired Mr. Welbourne.

After the homeowner contacted Mr. Welbourne, Mr. Welbourne came out and looked at things and determined that the reason there was a leak was because of a leak coming through one of the roof vents that he had replaced a year-and-a-half or two before.

I don't know how I can characterize that in any other way. That was the evidence. That was both given to me in written form and also in oral form on that day. I don't know how I can characterize it any different, so now the—apparently the fix was easy. Apparently the fix for this was to put ice guards or roof guards

5

or, I'm not sure what I'll call them, ice guards on these four roof vents, and whether or not that was contracted for, I can't tell you.

I do know this. Four roof vents were replaced at the time Mr. Welbourne did this job. He frankly, in this Court's view, had a choice to make whether to put in whatever type of roof vent he wanted to include as part of his roof repair. He chose one that didn't have, I guess, ice guards in it, so he later installs them, and apparently that takes care of everything, so I'm just sitting here thinking, as the finder of fact, if he had just put roof vents in with ice guards, we wouldn't be sitting here today.

He's the one that decided how to fix this roof, and as to the unusual or unnatural, I can't remember exactly what word was used, but the great accumulation of snow, this is Central Illinois. Snow falls. It gets on roofs all the time, and since I live here, I can have a recollection of whether or not there's such a serious amount of snow in the past—well, for my entire lifetime, and I know that in 2011, that winter, there wasn't.

\* \* \*

When I'm given a set of facts where we've got a leak on the left side and that gets fixed, but as part of the repair, these roof vents got replaced, and then a year, year and a half later, there is a leak that comes through one of those roof vents, I don't know how I'm to characterize that other than a lack of workmanship quality has caused a leak on the right side of the house."

¶ 11    Welbourne appealed.

¶ 12                      ANALYSIS

¶ 13    On appeal, Welbourne argues that the trial court erred in ruling in State Farm's favor after a bench trial on State Farm's complaint for negligent roof repair. Welbourne asserts that the trial court's finding after bench trial—that Welbourne had breached the duty or standard of care—was against the manifest weight of the evidence. Welbourne asks, therefore, that we reverse the trial court's judgment and enter a judgment in favor of Welbourne instead.

¶ 14    Initially, we note that State Farm has not filed an appellee's brief in this appeal. Generally, a reviewing court will not act as an advocate for an appellee who fails to file a brief. *First National Bank of Ottawa v. Dillinger*, 386 Ill. App. 3d 393, 395 (2008). However, when the record is simple and the claimed error can easily be decided without the aid of an appellee's brief, such as in the instant case, an appellate court should decide the appeal on the merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *First National Bank of Ottawa*, 386 Ill. App. 3d at 395. Therefore, we will proceed to decide the merits of this appeal, even though State Farm has not filed an appellee's brief in this case. See *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133; *First National Bank of Ottawa*, 386 Ill. App. 3d at 395.

¶ 15    Turning to the merits, we note that to sustain a cause of action for negligence, a plaintiff must plead and prove by a preponderance of the evidence the following three elements: (1) that the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of the plaintiff's injuries. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 51 (1999); *Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 19. In this particular case, the only element of State Farm's negligence claim that is in dispute on

appeal is the second element, that Welbourne breached his duty of care in performing the roofing repair work.

¶ 16    Under negligence law, the standard of care required of a defendant in an ordinary negligence case is to act as an ordinarily careful person or reasonably prudent person would act under similar circumstances. *Jones*, 191 Ill. 2d at 295; Illinois Pattern Jury Instructions, Civil, Nos. 10.01, 10.02, 10.04 (2011). The determination of whether a person breached the duty of care is normally a question of fact for the trier of fact to decide (*Bier*, 305 Ill. App. 3d at 51) and is dependent upon the unique facts and circumstances that were present when the incident in question occurred (*Sims v. Chicago Transit Authority*, 4 Ill. 2d 60, 66 (1954)).

¶ 17    A trial court's factual determination made after a bench trial—that a defendant breached the duty of care—will not be reversed on appeal unless that determination is against the manifest weight of the evidence. See *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002) (a trial court's factual findings made after a bench trial will not be reversed on appeal unless they are against the manifest weight of the evidence); *Meyers v. Woods*, 374 Ill. App. 3d 440, 449 (2007) (same). A factual finding is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the finding itself is unreasonable, arbitrary, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006); *Meyers*, 374 Ill. App. 3d at 449.

¶ 18    After having reviewed the record in the present case, we find that the trial court's ruling was well supported by the evidence. The evidence presented at the bench trial established that Welbourne was hired in 2009 to fix Schreiber's leaky roof, that as part of the roof-repair work, Welbourne replaced the four roof vents, that Welbourne guaranteed his workmanship on the project for a period of two years, that about 18 months later, the roof started leaking again in a

8

different spot, that the new leak was caused by the lack of ice shields around the roof vents that Welbourne had installed, and that when Welbourne installed different vents with ice shields around them, the problem was immediately resolved. Under those circumstances, we must conclude that the trial court's finding—that Welbourne breached the duty of care—was not against the manifest weight of the evidence. See *Best*, 223 Ill. 2d at 350; *Meyers*, 374 Ill. App. 3d at 449. There was nothing arbitrary or unreasonable about the trial court's determination in that regard, and we will not substitute our judgment on that issue for that of the trial court. See *Best*, 223 Ill. 2d at 350-51 (a court of review will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn from the evidence).

¶ 19       Although Welbourne complains about the truncated procedure in the trial court, this was a small claims case, and the trial court was authorized under Illinois Supreme Court Rule 286 to use an informal procedure. See Ill. S. Ct. R. 286(b) (eff. Aug. 1, 1992). Both parties were advised in advance of the informal procedure that the trial court intended to use, and neither party posed an objection to that procedure or sought permission from the trial court to deviate from that procedure. In addition, to the extent that Welbourne complains about the trial court's consideration of its own knowledge of winter conditions in central Illinois, we find no error in the trial court doing so. It is well established that the trier of fact may consider the evidence in light of his or her common knowledge and life experiences. See *People v. Schaffner*, 382 Ill. 266, 279 (1943); Illinois Pattern Jury Instructions, Civil, No. 1.01 (approved June 21, 2012).

¶ 20       In reaching the conclusion that we have reached in this case—that the trial court's finding that Welbourne breached his duty of care was not against the manifest weight of the evidence— we must take a moment to comment upon the possible application of the economic loss doctrine

9

(commonly known in Illinois as the *Moorman* doctrine) in this case. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 85-92 (1982) (stating that a plaintiff may not recover damages under a tort theory, such as strict liability, negligence, or innocent misrepresentation, for solely economic loss caused by the failure of a defective product to perform as expected; rather, any recovery by the plaintiff for such loss must come under a contract theory); Restatement (Third) of Torts: Liability for Economic Harm § 2 (Tentative Draft No. 1, 2012) (defining economic loss); Restatement (Third) of Torts: Liability for Economic Harm § 3 (Tentative Draft No. 1, 2012) (stating that except as provided elsewhere in the restatement, there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties). Although the economic loss doctrine could potentially apply in this case (see *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153 (1986) (applying the economic loss doctrine to a contract for services); Restatement (Third) of Torts: Liability for Economic Harm § 6 (Tentative Draft No. 2, 2014)), it appears from the facts that State Farm's negligence claim would fall under an exception to the economic loss doctrine, one that applies when the plaintiff has sustained personal injury or property damage to other property not part of the contract. See *Moorman Manufacturing Co.*, 91 Ill. 2d at 86; *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21, 26-27, 41-42 (1997); *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 156-57 (Ind. 2005) (although the economic loss rule precluded tort recovery for damage to a home facade that was purchased separately from the home itself, it did not preclude tort recovery for damage to the home and its parts caused by the allegedly negligent installation of the facade); Restatement (Third) of Torts: Liability for Economic Harm § 2 cmt. b, illus. 2 (Tentative Draft No. 1, 2012);

see also Restatement (Third) of Torts: Products Liability § 21 (1998) (discussing the other property doctrine as it relates to defective products).

¶ 21                                CONCLUSION

¶ 22        For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

¶ 23        Affirmed.

¶ 24        JUSTICE McDADE, dissenting:

¶ 25        The majority has affirmed the decision of the circuit court of Tazewell County ordering a monetary judgment against the defendant, William Welbourne d/b/a Welbourne Builders, Inc., for negligent roof repair. Because I believe the trial court's decision is against the manifest weight of the evidence, I respectfully dissent from the judgment.

¶ 26        Timothy Schreiber and William Welbourne entered into a written contract for the repair of Schreiber's roof, which had sustained hail damage and had begun to leak in one area. The contract included replacement of four vents in the roof. There is nothing in the contract regarding the installation of ice guards around the vents. There is also no evidence in the record that the original vents had ice guards such that "replacement" should reasonably have included them. There is similarly no evidence in the record that the inclusion of ice guards would be dictated by statute or ordinance or by any industry standard in the area. Nor is there any evidence of whether Schreiber and Welbourne discussed adding ice guards and decided to forgo them for some reason. The contract included a two-year warranty, with which Welbourne fully complied when a leak appeared in a different area of the new roof within the warranty period. There is no evidence that Welbourne did not comply with all of the terms of the contract in a workmanlike manner.

11

¶ 27    At issue in this appeal is a challenge to a finding of a duty neither created nor supported in the record by express contract terms, a legal requirement, or a demonstrable prevailing standard of the roofing business. What the trial court found and the majority affirms is that because Welbourne did not do something *outside the contract*, he had not done a workmanlike job in discharging its actual terms. There is no evidence in the record that supports that conclusion.

¶ 28    And then there is the snow. Although no person sworn to tell the truth ever actually testified, the parties, under oath, ratified representations made to the court by their attorneys. In this format prescribed by the court, there was evidence from Welbourne—uncontroverted by any other evidence of record—of severe weather that winter, of very heavy accumulations of snow (12 inches) and ice on the roof, and of the failure of the homeowner to clear his roof of the accumulated snow and ice, which neglect Welbourne alleged actually caused the new leak. The record further shows that Schreiber's inspector signed off on the work and neither the Better Business Bureau nor the Attorney General's consumer fraud division—both of which Schreiber had complained to—found faulty work by Welbourne.

¶ 29    In the face of this evidence, we have no actual evidence such as, for example, judicial notice of weather records but rather the trial court's musings. Off the top of his head, the trial judge could not remember an occurrence of what he subjectively considered particularly heavy accumulations of snow or ice in the preceding two winters and decided that, because he could not remember such, they had not happened. The court stated: "This is Central Illinois. We get snow every winter—sometimes several inches on the same day, sometimes only a few inches. *Res ipsa loquitur.*"

12

¶ 30       There is no evidence of any duty owed by Welbourne to Schreiber to install ice guards and consequently no evidence that any duty was breached. The decision is against the manifest weight of the evidence of record, and it should be reversed.