# Illinois Official Reports

## Appellate Court

---

### *Goldfarb v. Bautista Concrete, Inc.*, 2019 IL App (1st) 172968

---

| | |
|---|---|
| Appellate Court Caption | LENNY GOLDFARB, Plaintiff-Appellant, v. BAUTISTA CONCRETE, INC., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-2968 |
| Filed | March 22, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-347; the Hon. Margaret Ann Brennan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Morgan & Bley, Ltd., of Chicago (Keevan D. Morgan and Alanna G. Morgan, of counsel), for appellant.<br><br>McKnight & Kitzinger, LLC, of Chicago (Stanley A. Kitzinger, Kevin Q. Butler, and Joanne M. Krol, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1        The plaintiff-appellant, Lenny Goldfarb (Lenny) appeals from a judgment in the circuit court of Cook County finding that he lacked standing to bring his cause of action and granting summary judgment in favor of the defendant-appellee, Bautista Concrete, Inc. (Bautista). For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                                    BACKGROUND

¶ 3        Lenny filed a complaint against Bautista alleging (1) breach of implied warranty of good workmanship, (2) breach of implied warranty of habitability, (3) breach of contract/third-party beneficiary, and (4) negligence. The complaint was related to a residential construction project at 1722 Chapel Court, Northbrook, Illinois (the property). Lenny alleged that he hired Phoenix Construction Company (Phoenix)[1] to be the general contractor on the construction project at the property and that Phoenix subsequently hired Bautista as the subcontractor to perform the concrete work. Lenny further alleged in his complaint that due to Bautista's "multiple breaches," numerous repairs had to be done on the construction project, causing Lenny to "suffer[ ] at least $412,224.45" in damages.

¶ 4        After Bautista answered the complaint and the parties engaged in discovery, Bautista filed a motion for summary judgment. Bautista's motion argued that summary judgment should be granted in its favor because (1) Lenny had no standing to bring a cause of action, (2) Lenny and Bautista were never in privity of contract, (3) Lenny was not the intended beneficiary of the contract between Bautista and Phoenix, (4) Lenny could not maintain a claim for breach of implied warranty of habitability against a subcontractor when he had recourse against Phoenix, and (5) Lenny's negligence claim was barred by the economic loss doctrine.

¶ 5        Bautista's motion for summary judgment attached a transcript of Lenny's deposition. In his deposition, Lenny admitted that while he occupied the property, his father, Grigory Goldfarb (Grigory), was the property's legal owner. Bautista's motion further argued that Lenny admitted in his deposition that there was never a written or oral contract between him and Bautista, and so he therefore could not maintain a cause of action for breach of implied warranty of good workmanship. Additionally, Bautista's motion asserted that because Lenny had a potential claim against Phoenix, and had not alleged that Phoenix was insolvent, he was barred from maintaining a breach of implied warranty of habitability action against Bautista, Phoenix's subcontractor. Bautista's motion also argued that Lenny could not maintain a breach of contract action because he failed to allege any contract terms identifying him as the intended third-party beneficiary of the contract between Bautista and Phoenix. Finally, Bautista's motion for summary judgment argued that the economic loss doctrine[2] barred Lenny's negligence claim.

---

[1]Phoenix was not named as a party in this case.

[2]The economic loss doctrine, also known as the *Moorman* doctrine in Illinois (see *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)), provides that a plaintiff may not recover damages under a tort theory, such as negligence, for solely economic loss caused by the failure of a defective product to perform as expected; rather, any recovery by the plaintiff for such loss must come under a contract theory. *State Farm Fire & Casualty Co. v. Welbourne*, 2017 IL App (3d) 160231, ¶ 20.

¶ 6    Lenny's response to Bautista's motion for summary judgment admitted that his father, Grigory, purchased the property and took out a $1 million loan for the construction project. Lenny explained, however, that he and his father agreed that Lenny would make the loan payments as he was the intended occupant and future owner of the property. He further explained that he and his father agreed to split the costs of construction equally above and beyond the $1 million construction loan, which they expected to be approximately $150,000. Lenny argued that he ultimately spent at least $650,000 of his own money on the construction project, nearly $575,000 more than he expected to spend, largely due to Bautista's actions. He argued that this financial expenditure on the construction project gave him standing to bring his lawsuit. Lenny also argued that there was at least a disputed question of fact regarding whether he was the intended third-party beneficiary of the contract between Bautista and Phoenix because there was conflicting deposition testimony regarding whether the contract was written or oral. Lenny further claimed that Phoenix was indeed insolvent on the day he filed his complaint, allowing him to maintain a breach of implied warranty of habitability claim against Bautista directly. Finally, Lenny argued that his damages fell within a well-established exception to the economic loss doctrine.

¶ 7    Following a hearing, the trial court granted Bautista's motion for summary judgment and dismissed Lenny's complaint. The court ruled that because Lenny was not the property owner, he lacked standing to bring his lawsuit. The court explained that Lenny's $650,000 toward the construction project was a gift to his father, "as if Warren Buffet contributed money to the construction," and therefore did not confer standing. The court also found that Lenny was not a third-party beneficiary to the contract between Bautista and Phoenix because he "could not produce sufficient evidence to show that a contract existed or what its terms would be." The court noted that to assert an implied warranty of habitability claim against a subcontractor, the contractor must be insolvent. However, the court explained that Lenny's complaint could not be amended to plead Phoenix's insolvency because Lenny lacked standing. And the court further held that because it had found that Lenny lacked standing, it did not need to reach Lenny's breach of implied warranty of good workmanship claim or Bautista's arguments regarding the economic loss doctrine.

¶ 8    Following the trial court's entry of summary judgment in favor of Bautista, Lenny filed a notice of appeal.

¶ 9                                          ANALYSIS

¶ 10    We note that we have jurisdiction to review this matter as Lenny filed a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 11    On appeal, Lenny argues that the trial court erred by granting summary judgment in favor of Bautista. Specifically, Lenny argues that although he is not the legal owner of the property, he contributed $650,000 toward the construction project and is the intended future owner of the property, which confers standing. Lenny further argues that there is a disputed question of fact regarding whether he was a third-party beneficiary to the contract between Bautista and Phoenix because there was conflicting deposition testimony as to whether the contract was written or oral. He accordingly asks us to reverse the trial court's order granting summary judgment.

¶ 12    The purpose of summary judgment is to determine if a question of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should

be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 13    Here, the trial court granted summary judgment on the basis of standing. The doctrine of standing ensures that issues are raised only by those parties who have a sufficient legal stake in the outcome of the controversy. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 39. A party's standing to sue must be determined at the time the lawsuit is filed; a party either has standing at the time the lawsuit is brought or it does not. *Deutsche Bank National Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, ¶ 15.

¶ 14    Our supreme court in *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, recently held that a claim for breach of the implied warranty of habitability is a "creature of contract" that cannot be asserted by the purchaser of a home against a subcontractor without a *contractual relationship* between the *property owner* and the subcontractor. *Id.* ¶ 30. Considering that Lenny admitted that he is not the legal owner of the property and that he never contracted with Bautista, it necessarily follows that he lacks standing to bring a claim for breach of the implied warranty of habitability. It is irrelevant whether Phoenix is insolvent, whether Lenny is the current occupant of the property, or whether Grigory intends to transfer the property to Lenny in the future. Lenny never contracted with Bautista,[3] which our supreme court has now clarified is a prerequisite for a breach of implied warranty of habitability claim. Additionally, it is reasonable to extend that reasoning to the claim for breach of the implied warranty of good workmanship, which applies to workmanship issues in construction *contracts*. See *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 431 (1999).

¶ 15    We also reject Lenny's argument that there is a disputed question of fact regarding whether he was a third-party beneficiary to the contract between Bautista and Phoenix. Although there was conflicting deposition testimony as to whether the contract between Bautista and Phoenix was written or oral, there was no testimony that Lenny was the intended third-party beneficiary. Most importantly, neither a contract nor its terms was ever actually produced. And this is important because there must be evidence of express terms in the contract identifying the third-party beneficiary. *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 647 (1991) (courts require an express provision because there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties).

¶ 16    Lenny makes several arguments regarding whether the financial contributions he made toward the construction project were gifts to Grigory. However, we need not parse that issue, as the context of those payments is immaterial. Lenny made the financial contributions to *Grigory*, not *Bautista*. Lenny is therefore a stranger to the transaction between Bautista and Phoenix and has no legal relationship to Bautista.

---

[3]Although not relevant to our analysis, we note that Lenny never contracted with Phoenix, either.

¶ 17    We note that Lenny argues that if Grigory and/or Phoenix were necessary parties to his lawsuit, that the *trial court* should have joined them as parties. Lenny even goes so far as to argue that because the court did not *sua sponte* join them as parties to his lawsuit, the court's order of summary judgment is null and void. We find this argument to be meritless, as there were never any motions before the court to join Grigory and/or Phoenix to Lenny's lawsuit. Moreover, it is not the trial court's responsibility to *sua sponte* join necessary parties to a lawsuit pending before the court. It was Lenny's lawsuit. He had the responsibility to sue the necessary parties. It would have been inappropriate for the court to do so. Lenny does not and cannot explain how this could have been procedurally accomplished.

¶ 18    Ultimately, the pleadings and depositions in this case demonstrate that Lenny is not the legal owner of the property and never contracted with Bautista. He therefore lacked standing to bring his lawsuit against Bautista. Accordingly, we affirm the trial court's order granting summary judgment in favor of Bautista and dismissing Lenny's complaint.

¶ 19    We now address Bautista's request for this court to impose sanctions against Lenny. Bautista points out that shortly after the trial court granted summary judgment in its favor, Grigory filed his own complaint against Bautista and Phoenix for the same damages alleged in Lenny's lawsuit. Bautista argues that because of the new, pending lawsuit by Grigory, Lenny's appeal is "frivolous" and Lenny should therefore be required to pay Bautista's legal fees incurred by defending this appeal.

¶ 20    Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) provides:

"If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense."

Imposition of sanctions under Rule 375(b) is left strictly to our discretion. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 59.

¶ 21    Bautista has failed to provide any evidence that Lenny's appeal was frivolous or pursued in bad faith. Grigory's separate lawsuit for damages does not support the theory that Lenny did not reasonably believe that he could recover his own damages from Bautista. Although Lenny's appeal was unsuccessful, we cannot conclude that it is sanctionable. A losing argument is not necessarily a sanctionable argument. We cannot say that Lenny knew or should have known that his arguments could not and would not carry the day. Thus, we cannot say that the appeal was brought in bad faith or that Lenny sought to harass, delay, or unnecessarily increase litigation costs by initiating this appeal. Accordingly, sanctions would be improper. See *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2018 IL App (4th) 150519-B, ¶ 72 (Rule 375(b) sanctions are penal in nature and should only be applied to cases falling strictly within the language of the rule). We therefore decline to impose sanctions against

Lenny.

¶ 22                                                  CONCLUSION
¶ 23             For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24             Affirmed.