# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black;">

### *Victim A v. Chung Song*, 2021 IL App (1st) 200826

</div>

| | |
|---|---|
| Appellate Court Caption | VICTIM A, Plaintiff-Appellee, v. CHUNG SONG, M.D., Defendant and Third-Party Plaintiff-Appellant, (Charon Harper, Third-Party Defendant). |
| District & No. | First District, Third Division<br>No. 1-20-0826 |
| Filed<br>Rehearing denied | June 30, 2021<br>August 24, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2017-L-04999; the Hon. Joan E. Powell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stacey A. Cischke, Garrett L. Boehm Jr., and Daniel M. Yukich, of Johnson & Bell, Ltd., of Chicago, for appellant.<br><br>Dean J. Caras, of Caras Law Group, P.C., of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Howse and Justice Ellis concurred in the judgment and opinion. |

¶ 1    Judgment was entered against Chung Song, M.D., the sole defendant in Victim A's emotional distress action. However, for the next two years, he opposed her efforts to enforce the judgment, contending that he was rendered only severally liable, instead of jointly and severally liable, by a combination of his successful contribution action against a co-tortfeasor, Charon Harper, and the operation of section 2-1117 of the Code of Civil Procedure, which is a statute that modified the common law rule of joint and several liability in "actions on account of bodily injury or death or physical damage to property *** or product liability." 735 ILCS 5/2-1117 (West 2018). The trial court ruled that section 2-1117 was inapplicable because there had been no allegation or testimony of bodily injury, death, or physical damage to property in Victim A's emotional distress case. The court entered a memorandum of judgment that Victim A could use to collect the $300,000 judgment debt from Song but allowed Song to take an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 2    Thus, the issue in this interlocutory appeal is whether physician Song is jointly and severally liable to his former patient, Victim A, for the $300,000 judgment entered in her negligence suit against him, after her medical records were photographed and uploaded to social media by one of his other patients, Harper. Harper, who believed her boyfriend was attempting to befriend Victim A through Facebook, publicized that Song had treated Victim A for a gynecological condition. Harper never disclosed how she obtained Victim A's records while she was in Song's medical office, and Song was unaware there was a problem until Victim A confronted him. Victim A sued only Song, not Harper, for negligently allowing the disclosure of her confidential, personal information. In May 2019, a jury awarded her $150,000 for emotional distress and $150,000 for embarrassment and humiliation, and the trial judge entered a $300,000 judgment, plus costs, against the physician.

¶ 3    Pending at the time was Song's separate third-party complaint against Harper for contribution pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2018)) due to Harper's negligent and intentionally tortious conduct of possessing and disseminating Victim A's medical records. Song alleged that if Victim A prevailed in her action against Song, then he was entitled to receive contribution from Harper based on her relative degree of fault. Harper failed to appear and was found in default in November 2018. After Song was found liable to Victim A, he presented a motion for prove-up of his contribution action, and the trial judge entered a written order finding "Charon Harper is 90% at fault for contribution and Chung Song is 10% at fault plus court costs."

¶ 4    Song then paid 10% of the $300,000 judgment and costs to Victim A ($30,658) and opposed her post-judgment supplementary proceedings to obtain the remaining $270,000 and costs by arguing that he had been found only severally liable for 10% of the judgment. The trial judge disagreed with Song's recollection of the contribution hearing, ruled that section 2-1117 did not apply to the facts (735 ILCS 5/2-1117 (West 2018)), and granted Victim A's motion for a memorandum of judgment in the amount of $300,000, to be recorded as a lien against the doctor's residence. See 735 ILCS 5/12-101 (West 2018). The judge denied Song's motion to reconsider the memorandum and stay Victim A's recordation of it but authorized this interlocutory appeal. At the time, Victim A's supplementary citation proceedings had been dismissed without prejudice pending her presentation of a final and appealable judgment order. Her supplementary proceedings resumed when she tendered the $300,000 memorandum of

judgment. We have since granted Song's motion to approve the filing of his $1 million professional liability insurance policy as security and stay execution of the judgment pending this appeal. See Ill. S. Ct. R. 305(d) (eff. July 1, 2017).

¶ 5 Song's first of three arguments is that the 90%-10% ruling in his contribution action brought his liability to Victim A under the 25% threshold for several liability set out in section 2-1117 (735 ILCS 5/2-1117 (West 1994)). See *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 69, 783 N.E.2d 1024, 1028 (2002) (indicating section 2-1117 modified the common law rule of joint and several liability). Victim A responds that section 2-1117 does not apply by its plain language and that the verdict and judgment against Song could not be affected by his separate contribution action against Harper.

¶ 6 Section 2-1117 states as follows:

"[I]n actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant except the plaintiff's employer, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants except the plaintiff's employer, shall be jointly and severally liable for all other damages." 735 ILCS 5/2-1117 (West 2018).

¶ 7 Song's argument is based on the first two sentences of the statute. He cites *Unzicker* and *Ponto* for the proposition that "[t]he clear legislative intent behind section 2-1117 is that minimally responsible defendants should not have to pay entire damage awards. The legislature set the line of minimal responsibility at less than 25%." *Unzicker*, 203 Ill. 2d at 78; *Ponto v. Levan*, 2012 IL App (2d) 110355, ¶ 38, 972 N.E.2d 772. Referring to the first sentence of the statute, Song argues that "Plaintiff filed suit against Dr. Song claiming *negligence*, and a verdict was rendered against Dr. Song and in favor of Plaintiff based on the *negligence* claim." (Emphases added.) He contends that at his contribution hearing, "Harper was apportioned fault at 90% and Dr. Song was apportioned fault at 10% plus costs." (However, this description is inaccurate since the court order in Song's contribution claim clearly provides that "Charon Harper is 90% at fault *for contribution* and Chung Song is 10% at fault plus court costs." (Emphasis added.)) Song then refers to the second of the three sentences by arguing that "2-1117 applies to 'any third party defendant,' who in this case was Charon Harper." He concludes that the 90%-10% ruling in his contribution action brought his liability to Victim A under the 25% threshold for several liability set out in section 2-1117 (735 ILCS 5/2-1117 (West 1994)), and then, by operation of law, section 2-1117 rendered him only severally liable to Victim A for 10% of the $300,000 judgment plus costs, which he has already paid.

¶ 8 Statutory interpretation is a question of law, and questions of law are addressed *de novo* on appeal. *Unzicker*, 203 Ill. 2d at 74. The primary objective in statutory construction is to determine and give effect to the legislature's intent. *Unzicker*, 203 Ill. 2d at 74. The best indicator of the legislature's intent is the statute's language, which must be given its plain and ordinary meaning. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 16-17, 678 N.E.2d 1009, 1017 (1996). Where language is clear and unambiguous, a court may not depart from it by

reading into the statute exceptions, limitations, or conditions that the legislature did not express. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16, 25 N.E.3d 570.

¶ 9    As there is no suggestion that Song's tortious conduct caused death or physical damage to property, Song's appeal depends on the narrow question of whether Victim A brought a negligence "action[ ] on account of bodily injury." 735 ILCS 5/2-1117 (West 2018). Song fails to explain the meaning of this key phrase and thus explain how section 2-1117 is relevant to Victim A's action.

¶ 10    Because the legislature did not define "bodily injury," the legislature intended for the term to have its ordinary and popularly understood meaning. *People v. Chapman*, 2012 IL 111896, ¶ 24, 965 N.E.2d 1119 (when a statute contains a term that the legislature did not specifically define, it is appropriate to look to the dictionary for the term's plain and ordinary meaning); *Advincula*, 176 Ill. 2d at 17 (consulting a legal dictionary for ordinary and popularly understood meaning). A commonly accepted definition of "bodily injury" is "Physical damage to a person's body." Black's Law Dictionary (11th ed. 2019). Victim A, however, did not claim she suffered physical damage to her body as result of Song's negligence with her medical records. She alleged in her first amended complaint, "16. That as a direct and proximate result of the aforesaid careless and negligent acts or omissions of the Defendant, CHUNG SONG, M.D., [which allowed disclosure of personal and identifiable information] Plaintiff was caused extreme emotional distress, damage to her reputation, embarrassment, among other damages." In turn, "emotional distress" is not a "bodily injury." Rather, "emotional distress" is commonly defined as: "A highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering. • Emotional distress, when severe enough, can form a basis for recovering damages in tort.—Also termed *emotional harm*; *mental anguish*; *mental distress*; *mental suffering*." (Emphasis in original.) Black's Law Dictionary (11th ed. 2019). This means that bodily injury and emotional distress are different conditions and are not interchangeable terms. Victim A's negligence action did not concern "bodily injury" as that phrase was used in section 2-1117. Accordingly, we find that section 2-1117 had no application to Victim A's action.

¶ 11    Song argues in his reply brief that a commonly used definition of "bodily injury" is "damage to a person's physical condition including pain or illness." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/legal/bodily%20injury (last visited June 3, 2021) [https://perma.cc/AJ85-95UN]. He also contends that there is a trend in the law to equate bodily harm with emotional harm and that "[m]ental disturbance may be classified *** as illness." Song forfeited this argument by failing to present it in his opening brief. *Vali Mohammad v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 122151, 993 N.E.2d 90; Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (an appellant forfeits points not raised in his initial brief and cannot argue them for the first time in the reply brief; a party forfeits legal arguments that are not well developed).

¶ 12    Forfeiture aside, Victim A did not claim that Song's negligence caused damage to her physical condition; her alleged injuries were limited to her emotional condition. Furthermore, there is no trend in the law to equate bodily harm with the emotional disturbance (nightmares, social anxiety, embarrassment, and humiliation) that Victim A experienced after the disclosure of her personal and confidential medical information. The authority that Song cites for a so-called trend of viewing physical injury and emotional injury as "one [and] the same" actually

draw the traditional distinction between these two distinctly different types of injuries. See *Corgan v. Muehling*, 143 Ill. 2d 296, 312, 574 N.E.2d 602, 609 (1991) (indicating that a former patient who brought claim of negligent infliction of emotional distress against an unregistered psychologist was not required to allege that she suffered physical injury or illness as a result of emotional distress she experienced when he repeatedly engaged in sexual intercourse with her under the guise of therapy); *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 12, 31 N.E.2d 29831 (in claim for negligent infliction of emotional distress, minor allegedly "suffered physical injury and emotional distress, which resulted in the need for continued medical and psychological treatment and counseling"). Also, because Victim A did not testify that her emotional suffering led to physical problems such as dizziness, nausea, or headaches, there is no reason for Song to cite authority about those physical symptoms. See Restatement (Second) of Torts § 436A cmt. c (stating "transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and like *** are in themselves inconsequential and do not amount to any substantial bodily harm" but "long continued nausea or headaches may amount to physical illness, which is bodily harm"). Thus, Song has still failed to show that bodily injury and emotional distress are substitutable terms, and he has still failed to show that section 2-1117 is controlling.

¶ 13 Song's second argument is that on June 11, 2019, the trial judge found Song was minimally liable for 10% of the $300,000 judgment entered against him and that the court lacked jurisdiction to disturb this final judgment more than 30 days later on March 16, 2020. The record shows that when Song remitted only 10% of the judgment and costs, Victim A pursued assistance through post-judgment citation proceedings and also by returning to the trial judge for the $300,000 memorandum of judgment to be recorded as a property lien. On April 10, 2020, the trial judge entered the $300,000 written memorandum of judgment in favor of Victim A and against Song and entered a separate order specifying that the memorandum of judgment was entered *nunc pro tunc* to March 16, 2020. See *Wells v. State Farm Fire & Casualty Co.*, 2020 IL App (1st) 190631, ¶ 42, 148 N.E.3d 919 (generally, a trial court loses jurisdiction to vacate or modify its judgment 30 days after entering the judgment but at any time may modify its judgment *nunc pro tunc* to correct a clerical error so that the record reflects the judgment actually rendered); *In re Marriage of Benson*, 2015 IL App (4th) 140682, ¶ 40, 33 N.E.3d 268 (although the trial court loses jurisdiction over a matter 30 days after entry of a final and appealable order, the trial court always maintains jurisdiction to enforce its judgment). Song contends that the ruling on March 16/April 10, 2020, was a "radical departure" from the ruling on June 11, 2019, rather than an enforcement of the existing judgment.

¶ 14 We disagree with Song. Having examined the record, with particular emphasis on the portions of the June 11, 2019, transcript that Song cites in his appellate brief, we reject his contention that during that June prove-up of his contribution action, the trial judge reduced Song's liability to Victim A below $300,000. Song's description of the court's ruling in his contribution claim indicates that he misconstrues the nature of a contribution claim. The record does not indicate that "Harper was apportioned fault at 90% and Dr. Song was apportioned fault at 10% plus costs" for the $300,000 judgment that was entered in Victim A's suit against Song.

¶ 15 Song's complaint for contribution, the report of proceedings from the prove-up of Song's action, and the written order all indicate that the action, hearing, and ruling concerned only

Song's claim for contribution from Harper and did not reduce his liability to Victim A or somehow implicate section 2-1117. 735 ILCS 5/2-1117 (West 1994).

¶ 16    As we summarized above, Song's complaint was against Harper. He alleged:

> "14. There was in full force and effect in Illinois a statute entitled 'an Act in Relation to Contribution Among Joint Tortfeasors,' 740 ILCS 100/0.01 *et seq.* ('the Contribution Act'), which statute applies to actions for contribution arising on or after March 1, 1978, including the instant action.
>
> 15. By virtue of the Contribution Act, if VICTIM A prevails against CHUNG SONG, M.D., then CHUNG SONG, M.D. is entitled to receive contribution from CHARON HARPER, based upon the percentage to which the liability or fault of CHARON HARPER caused or contributed to cause VICTIM A injuries or damages pursuant to the Illinois Contribution Act, 740 ILCS 100/1 *et seq.*
>
> WHEREFORE, the Defendant/Third-Party Plaintiff, CHUNG SONG, M.D., demands judgment against CHARON HARPER, based on her relative degree of fault and proximately causing the injuries and damages alleged by the Plaintiff, and its costs associated therewith."

¶ 17    A "contribution claim" is "[a] defendant's claim to recover part of his or her liability to a plaintiff from another defendant or some third party who, it is asserted, should share in the liability." Black's Law Dictionary (11th ed. 2019). See, *e.g.*, *Caballero v. Rockford Punch Press & Manufacturing Co.*, 244 Ill. App. 3d 333, 334-35, 614 N.E.2d 362, 363 (1993) (where injured employee brought personal injury suit against a punch press maker and the designer of foot switch attached to a punch press, and the punch press maker sought leave to file contribution claim against plaintiff's employer). Contribution concerns only the rights of joint tortfeasors relative to each other and does not limit their liability for the plaintiff's judgment. *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 545, 563 N.E.2d 410, 416 (1990) (right of contribution contemplated by the Contribution Act exists among joint tortfeasors, not between tortfeasors and the parties they injure). Prevailing on his allegations gave Song a right of contribution from Harper if he pays more than his share of their common liability to Victim A. *Henry*, 138 Ill. 2d at 545 (section 2(b) of the Contribution Act gives tortfeasors a right of contribution if they pay more than their *pro rata* share of the common liability). In other words, when he pays Victim A more than 10% of the $300,000 judgment, Song has the right to collect those additional dollars from Harper, because he has a judgment to that effect on his contribution suit against her. Prevailing on his allegations could not and did not affect Song's liability to Victim A. He did not seek that relief, and he did not give the circuit court a basis for granting or denying that relief.

¶ 18    Similarly, the report of proceedings indicates that the parties' arguments and the court's ruling at the prove-up were about the contribution action and did not have any effect on Song's responsibility to pay Victim A the $300,000 judgment. During the hearing, Song's attorney stated, without identifying any authority, that depending on the percentage of liability apportioned between Song and Harper, the court's ruling would "affect [Song's] ultimate responsibility to the Plaintiff *** on the verdict." However, the court questioned that assertion, stating that it did not "think that that would negate the jury verdict against [Song]." The court also questioned whether Victim A had standing to participate in the hearing on the third-party complaint. The doctrine of standing ensures that issues are raised only by parties who have a real interest in the outcome of the controversy. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 23, 809

N.E.2d 1240, 1243 (2004). Victim A's attorney, who was in attendance, confirmed that he was "told I had no standing." The court asked Song's attorney if the court's ruling had the potential to affect Song's liability on the jury verdict to Victim A, whether that would "give [Victim A] standing *** to intercede in this and comment on this." Song's attorney stated that Victim A had not moved to intercede, and nonetheless, "this is a separate case. This is Dr. Song's case again[st] Charon Harper." The court agreed that Song's third-party complaint was "a separate case," and the court did not "see how my determining what he can pursue from Charon Harper is going to diminish his liability to the Plaintiff." Song's attorney responded that "depending what the percentage [is] that you say, that could affect the damages that the jury awarded" to the plaintiff. Song's attorney, however, did not identify any authority to that effect. Song's attorney later said that "joint and several liability no longer applies *** when a fault is under 25 percent" and that "the verdict amount against Dr. Song would be cut to that apportionment." Again, however, Song's attorney did not identify any authority to that effect. The court neither agreed nor disagreed with Song's attorney. The court later agreed with the attorney's "recommendation *** that Charon Harper is 90 percent liable in this case." The court then read aloud portions of the Contribution Act (740 ILCS 100/2(a), 4 (West 1994)), which is the statute Song cited in his third-party complaint against Harper. Specifically, "where [2] or more persons are subject to liability [in] tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." The court then said, "Okay. So I've got that against Charon Harper. A judgment has not been entered against her." The court next read aloud that a "plaintiff's right to recover the full amount of his judgment from any one or more defendants, subject to liability [in] tort for the same injury to person or property, or [for] wrongful death, is not affected by the provisions of this Act." The court then said:

> "That's where we are with this. So, by the third-party complaint here, Dr. Song is asking the Court to determine the amount that Charon Harper is liable for in his suit *for contribution* for her intentional tort under Count II.
>
> So now that I've read this part of the Act, *** this is a separate action, so *** I'm thinking that [Victim A] do[es] not have standing to be involved in this determination today, which is a prove-up of Charon Harper." (Emphasis added.)

¶ 19    Thus, the transcript establishes that the hearing concerned only Song's contribution action, did not reduce Song's liability to Victim A, and did not implicate section 2-1117. 735 ILCS 5/2-1117 (West 1994). Song's misconstrues what occurred at the hearing. He states:

> "After explaining the legal effect of apportionment finding based on the joint and several liability statute [that is, section 2-1117] and [its 25%] threshold [for] a minimally responsible defendant, the circuit court found Dr. Song to be a minimally responsible defendant by finding that third-party Charon Harper was 90% liable. R.1032."

In fact, there is no indication in the transcript that the circuit court contemplated section 2-1117 or explained its legal effect to the attorneys. The court did not cite section 2-1117 and neither of the attorneys cited it. There is no indication that the court considered reducing Song's liability to Victim A for the $300,000 judgment. The contribution prove-up concerned the contribution action only. It concerned only Song's rights relative to Harper and did not affect Song's liability for Victim A's judgment. *Henry*, 138 Ill. 2d at 545.

¶ 20    Consistent with the parties' arguments and the court's statements during the hearing, the court entered a written order on Song's complaint, finding, as we stated above, that "Charon Harper is 90% at fault *for contribution* and Chung Song is 10% at fault plus court costs." (Emphasis added.) We reiterate that contribution concerns only the rights of joint tortfeasors relative to each other and does not limit their liability for the plaintiff's judgment. *Henry*, 138 Ill. 2d at 545.

¶ 21    The contribution ruling allows Song to recoup from Harper 90% of what he pays to Victim A, but it does not diminish his liability to pay Victim A 100% of the judgment that was entered against him on the jury's verdict. The $300,000 judgment against Song on the jury's verdict, the 90%-10% ruling on Song's contribution action, and the $300,000 memorandum of judgment against Song are three consistent orders, and none of them indicate Song's liability to Victim A is less than $300,000.

¶ 22    The transcript and written order are also why we reject Song's third argument. Song contends that the June 11, 2019, judgment and his "10% several liability for the jury verdict is law of the case." Since the trial judge never found that Song was only 10% severally liable for the $300,000 jury verdict and judgment, law of the case does not apply here.

¶ 23    Lastly, we consider Victim A's request for her appellate attorney fees and costs because this appeal (1) does not present good faith arguments for a change of existing law, (2) is frivolous, as it relies on a misdescription of the record that the trial judge rejected during the hearing on Victim A's request for the memorandum of judgment, (3) has unnecessarily delayed satisfaction of the judgment entered against Song two years ago in May 2019, and (4) unnecessarily increased Victim A's litigation costs. Song responds that matters of first impression do not warrant an award for sanctions. See *Buckner v. Causey*, 311 Ill. App. 3d 139, 151, 724 N.E.2d 95, 105 (1999).

¶ 24    The rule governing appellate sanctions provides as follows:
    "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 25    An assessment of Rule 375(b) sanctions is a matter of our discretion. *Goldfarb v. Bautista Concrete, Inc.*, 2019 IL App (1st) 172968, ¶ 20, 126 N.E.3d 516. We apply an objective standard to determine whether an appeal is frivolous, considering whether it would have been brought in good faith by a reasonable, prudent attorney. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87, 2 N.E.3d 1052; Ill. S. Ct. R. 375, Committee Comments (adopted Aug. 1, 1989) (sanctioning a *pro se* litigant).

¶ 26    A losing argument is not necessarily sanctionable. *Goldfarb*, 2019 IL App (1st) 172968, ¶ 20; *Rubin & Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 49, 51 N.E.3d 879

- 8 -

(sanctions are reserved for the most egregious cases and are not imposed simply to punish parties for making losing arguments); *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2018 IL App (4th) 150519-B, ¶ 72, 99 N.E.3d 210 (sanctions should be applied only in cases that fall strictly within the language of the rule). In our discretion, we decline to sanction Song for his unpersuasive appeal.

¶ 27 We affirm the trial judge's denial of Song's motion to reconsider and to stay the $300,000 memorandum of judgment entered against him. We also deny sanctions as set forth above.

¶ 28 Affirmed.